[688 NYS2d 830]

Ulster Home Care, Inc., et al., Respondents, v Dennis C. Vacco, as Attorney General of the State of New York, Appellant.

Third Department, April 22, 1999

APPEARANCES OF COUNSEL

*Eliot Spitzer, Attorney General,* Albany (*Lawrence N. Gray* of counsel), for appellant.

*Tobin & Dempf,* Albany (*Raul A. Tabora* of counsel), for Ulster Home Care, Inc., respondent.

*O'Connell & Aronowitz,* Albany (*Cornelius D. Murray* of counsel), for James Mahoney and another, respondents.

**OPINION OF THE COURT**

CARPINELLO, J.

Plaintiff Ulster Home Care, Inc. (hereinafter Ulster Home) is the operator of an Ulster County licenced home care agency enrolled in the Medicaid program. During the course of an audit and investigation conducted by the office of the Attorney General (hereinafter defendant), through the Medicaid Fraud Control Unit (hereinafter MFCU), it was alleged that Ulster Home had sought reimbursement for personal care services at

a higher rate than charged to the general public, purportedly in violation of 18 NYCRR 505.14 (h) (7) (ii). This regulation, which has consistently been referred to by Ulster Home as the "public charge" regulation, provides as pertinent here:

"(1) Medical assistance payments to personal care services providers for any rate year beginning on or after January 1, 1994, are made at the lower of the following rates:

"(i) the rate the provider charges the general public for personal care services; or

"(ii) the rate determined by the department in accordance with [a cost-based methodology]" (18 NYCRR 505.14 [h] [7] [ii] [a] [1] [i], [ii]).

Up until MFCU's investigation, Ulster Home provided services under a contract with Ulster County and was reimbursed for services rendered pursuant to the cost-based methodology.

When faced with the prospect of criminal prosecution because of its alleged violation of the public charge regulation (which would have automatically terminated it from the Medicaid program pursuant to 18 NYCRR 515.7), Ulster Home commenced this action seeking declaratory and injunctive relief. In its complaint, the constitutionality of the regulation was placed directly at issue. Specifically, Ulster Home sought to prohibit defendant or his agents from enforcing the public charge regulation on the ground that it was unconstitutionally vague and ambiguous. It also sought a declaration that prosecutorial actions in seeking to recover funds based upon the public charge limitation contravened the contract between itself and Ulster County.

On June 2, 1998, Supreme Court issued a preliminary injunction enjoining the enforcement of the public charge regulation or demanding repayment of any funds received by Ulster Home under its contract with Ulster County. The court held: "Although it is true that the general rule is that equity will not enjoin criminal prosecutions, it is also true that where, as in this instance, the granting of a preliminary injunction is necessary for the protection of rights cognizable in equity and there is a danger of irreversible injury *as a result of prosecution* based on an invalid statute or administrative rule or order, such relief is available. Should [Ulster Home] be *prosecuted* as a result of the 'public Charge' regulation, immediate and irreparable injury and damage shall result to [Ulster Home] irrespective of the final outcome of the anticipated prosecution" (emphasis supplied).

Notwithstanding the clear mandate of the order, MFCU submitted charges to a Grand Jury on June 23, 1998 and apparently obtained an indictment as Ulster Home's arraignment was scheduled for June 26, 1998. This conduct prompted Ulster Home to commence a contempt proceeding. Following a hearing, Supreme Court found defendant in civil contempt of the prior order. Thereafter, defendant commenced a CPLR article 78 proceeding in this Court seeking to prohibit Supreme Court's enforcement of both the order granting the preliminary injunction and the contempt order. This application was summarily denied on the ground that "writs of prohibition and mandamus do not lie to review appealable orders". In the interim, plaintiffs James Mahoney and Diane Wiegand, Ulster Home's Executive Director and Assistant Executive Director, respectively, were permitted to intervene in this action. Defendant now appeals from the order granting a preliminary injunction and the subsequent civil contempt order.

We address first the propriety of Supreme Court's order granting the preliminary injunction. Fundamentally, a preliminary injunction may be granted where a movant has established the likelihood of ultimate success on the merits, irreparable injury and a balancing of equities in his or her favor (see, Aetna Ins. Co. v Capasso, 75 NY2d 860, 862; Doe v Axelrod, 73 NY2d 748, 750), and a court's decision to grant same will not be disturbed absent an abuse of discretion (see, Doe v Axelrod, supra). Significantly, a preliminary injunction is intended to preserve the status quo during the pendency of the action (see, Sforza v Nesconset Fire Dist., 184 AD2d 631, 632). The thrust of defendant's argument concerning the order granting the preliminary injunction is that Supreme Court simply lacked the authority to enjoin a criminal prosecution.[1] Specifically, defendant argues that a declaratory judgment in this case would run counter to the principle that jurisdiction over criminal matters rests solely in courts of law and may not be interfered

---

1. Noticeably absent from defendant's brief is any specific discussion or application of the elements necessary for a preliminary injunction or any argument that Supreme Court abused its discretion in granting same. Rather, the primary focus of the appeal from the preliminary injunction order is that Supreme Court lacked jurisdictional authority to enjoin a criminal prosecution. The failure to include any discussion or argument whatsoever concerning whether Ulster Home sufficiently established the requisite elements for a preliminary injunction warrants a conclusion that this issue has been abandoned (see, e.g., Failla v Amodeo, 225 AD2d 965, 967, n 3; Rebh v Lake George Ventures, 223 AD2d 986, 987; Matter of Hiser v Hiser, 175 AD2d 353, 354).

with by courts of equity, citing *Reed v Littleton* (275 NY 150). Declaratory relief, however, is available in cases where the constitutionality or legality of a statute or regulation is in question and no question of fact is involved (*see, Dun & Bradstreet v City of New York*, 276 NY 198, 206; *see also, New York Foreign Trade Zone Operators v State Liq. Auth.*, 285 NY 272, 276; *Bunis v Conway*, 17 AD2d 207, *lv dismissed* 12 NY2d 645, 882).

Indeed, as held by the Court of Appeals in *Reed v Littleton* (*supra*, at 153): "Where administrative officials act under a statute which infringes the Constitution, or under rules or regulations that are invalid, a person may have the right to petition the court to determine the jural relations, and to have the invalidity of the statute rule, or regulation declared." In *Reed v Littleton (supra,* at 154), the statute at issue was "concededly valid" and the facts were in dispute and open to different interpretations. Here, where the constitutionality of the public charge regulation has been implicated, the nature and purpose of the regulation sought to be tested is not disputed and the only questions involved are those of law (*cf., id.*; *Snap 'N' Pops v Dillon*, 66 AD2d 219; *Toomey v Neenan*, 59 Misc 2d 787), "equity should not hesitate to define the rights of the parties" (*New York Foreign Trade Zone Operators v State Liq. Auth., supra,* at 278). Thus, we find no basis to disturb the order granting injunctive relief.

■ We next address the more serious issue before this Court; namely, whether, based on MFCU's actions, defendant was properly found to be in civil contempt. "To sustain a civil contempt, a lawful judicial order expressing an unequivocal mandate must have been in effect and disobeyed * * * [and] the party to be held in contempt must have had knowledge of the order" (*McCain v Dinkins*, 84 NY2d 216, 226 [citations omitted]; *see, Matter of Department of Envtl. Protection v Department of Envtl. Conservation*, 70 NY2d 233, 240; *Matter of McCormick v Axelrod*, 59 NY2d 574, 583). It must further appear that the offending conduct has prejudiced the complaining party (*see, McCain v Dinkins, supra*). In our view, Supreme Court was justified in holding defendant in contempt.

First, Supreme Court's order could not have been any clearer in prohibiting the criminal prosecution of Ulster Home. Supreme Court explicitly found that enjoining criminal prosecution under the public charge regulation was necessary to protect Ulster Home's equitable rights and to avoid irreversible injury to it *"as a result of prosecution"* (emphasis supplied).

Once this injunction was issued, MFCU was not without adequate legal options; it could have moved to reargue before Supreme Court (*see*, CPLR 2221), moved for a modification of the preliminary injunction from this Court (*see*, CPLR 5518) or applied for a stay of enforcement pending appeal (*see*, CPLR 5519 [c]). Until judicial relief to stay or vacate the order was successfully obtained, defendant was duty-bound to honor it. This was not done.

In support of the conduct, two purported justifications are offered. First, it is claimed that defendant did not know that the injunction prohibited the enforcement of the public charge regulation. It is also claimed that the order was vague because of an obvious typographical error by Supreme Court in its citation to the public charge regulation.[2] These contentions are patently without merit.[3] Upon review of the injunction papers and Supreme Court's order, this Court is left with no doubt whatsoever that defendant knew the substance of the preliminary injunction concerned the public charge regulation—18 NYCRR 505.14 (h) (7) (ii)—and the resulting order prohibited further prosecution pending resolution of the proceeding.

Nor did filing a notice of appeal from that order invoke the automatic stay provisions of CPLR 5519 (a) (1), thereby cloaking defendant with legal protection from the subsequent contempt. We reject the claim that a good-faith basis existed to support indicting Ulster Home based on this statutory provision since there is recent decisional authority firmly establishing that no automatic stay is available by appealing—either as of right or by permission—from an order or judgment which prohibits certain conduct (*see*, *State of New York v Town of Haverstraw*, 219 AD2d 64, 65-66; *see also*, *Matter of Oliver v County of Broome*, 136 AD2d 793, 795).[4] As noted in *State of New York v Town of Haverstraw* (*supra*, at 66), a prohibitory injunction, which "operates to restrain the commission or continuance of an act and to prevent a threatened injury, thereby ordinarily having the effect of maintaining the status quo", is not automatically stayed under CPLR 5519 (a) (1).

Fundamentally, the objectives of a preliminary injunction and the automatic stay provision of CPLR 5519 (a) (1) are sim-

---

**2.** Instead of referring to 18 NYCRR 505.14 (h) (7) (ii), the court referred to 18 NYCRR 505.14 (h) (7) (i).

**3.** To this end, even if the order was somehow ambiguous, which it is not, defendant could have sought clarification from Supreme Court before presenting his case to the Grand Jury. He did not do so.

**4.** Significantly, defendant was a party in *State of New York v Haverstraw* (*supra*).

ilar—to maintain the status quo pending resolution of an action and an appeal, respectively (*compare, Sforza v Nesconset Fire Dist.*, 184 AD2d 631, 632, *supra; Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.*, 70 AD2d 1021, 1022, *with State of New York v Town of Haverstraw, supra; Matter of Oliver v County of Broome, supra*). To countenance defendant's position that CPLR 5519 (a) (1) permitted a criminal prosecution to go forward in its ordinary course would hardly maintain the status quo and indeed make any decision in plaintiffs' favor in the underlying action barren. Moreover, the attempt to sidestep the holding of *State of New York v Town of Haverstraw (supra)* by characterizing Supreme Court's order as not "purely prohibitory" can charitably be characterized as unpersuasive.

Defendant's remaining contentions have been considered and rejected.

CARDONA, P. J., MIKOLL, YESAWICH JR. and GRAFFEO, JJ., concur.

Ordered that the orders are affirmed, with costs.