*194 OPINION OF THE COURT
Alexander W. Hunter, Jr., J.
The application by petitioner for an order pursuant to CPLR article 78 to compel payment by the Comptroller of the City of New York is denied and the proceeding is dismissed.
Petitioner, Melvin Dubinsky, an attorney participating with the Assigned Counsel Plan (ACP) pursuant to article 18-B of the County Law (County Law § 722), seeks to compel the payment of two sets of vouchers submitted by notice of claim for rendered legal services. Under the first notice of claim, submitted on June 1, 2010, petitioner seeks a total of $13,834.45. (Petition H 59.) On July 9, 2010, petitioner filed a breach of contract action against the City of New York in New York County (index No. 037777-10), for “failure to pay for services rendered” under this first notice of claim. (Petition 1i 20.) Under the second notice of claim, submitted on December 30, 2010, petitioner seeks a total of $18,600.87. (Petition H 72.) No action has been commenced against the City with regard to this second notice. (Petition 1i 63.)
Private attorneys participating in the ACP must submit vouchers, for services rendered, to the Office of the Assigned Counsel Plan (the OACP). (43 RCNY 13-06.) Once vouchers clear this initial screening, they are printed and sent to the judge who presided over the matter in which the attorney provided representation for review and approval. (Id.) Finally, the vouchers are submitted to the OACP prior to payment by the Comptroller. Once approved, the vouchers are submitted to the Comptroller for payment. (Id.)
Petitioner states that in May of 2010, Amy Stanciu, Deputy Director of Audits for the ACf^ wrote to petitioner informing him that she wanted to review 19 cases that she had selected from October 16, 2009 through March 10, 2010. (Petition 1i 9.) In compliance with the request, petitioner e-mailed the case file attachments. Following this review, petitioner received a second letter from the City’s Criminal Justice Coordinator (CJC),* stating that both the CJC and the Department of Finance were auditing petitioner’s billing practices for the same 19 cases. (Petition 1f 10.) As a result of the CJC letter, petitioner met with Shari C. Hyman, Deputy CJC, in July 2010 and August 2010, to review submitted billing records. (Petition 1Í10.) Petitioner was informed that vouchers for several cases appeared to be exces *195 sive (e.g. expending too many hours on simple tasks or billing for clerical work or travel time at an attorney’s rate). (Mem in support of verified answer, at 3.) In response, petitioner asserted that the increase, beginning in 2009, resulted from the newly adopted practice of preparing memoranda of law based on denials of prior motions to dismiss. (Petition K 16.) Consequently, the CJC submitted its findings with regard to eight of petitioner’s vouchers to the approving court, indicating that petitioner was “unable to justify his over-billing on many of his cases.” (Mem in support of verified answer, at 3.) This CJC submission resulted in the reduction of several previously court-approved vouchers, as well as a counterclaim to petitioner’s aforementioned action against the City for the return of overpaid proceeds (index No. 037777-10). (Petition, exhibit 8, at 2.)
Respondent contends that petitioner’s subsequently submitted vouchers also contained characteristics of the excessive billing for which the Criminal Court had previously reduced payment. (Mem in support of verified answer, at 4.) Furthermore, respondent asserts that the CJC has submitted the entirety of petitioner’s approved vouchers to the Comptroller for payment and has also submitted all of petitioner’s unreviewed vouchers to the Criminal Court for approval. (Mem in support of verified answer, at 5.) The CJC avers that in the past it has “withheld payment from an attorney who participates in the ACP when he or she is suspected of fraud or abuse, pending the resolution of any audit or legal proceeding concerning the attorney.” (Mem in support of verified answer, at 5.)
Article 78 of the CPLR provides a procedure for judicial review of matters cognizable at common law under a writ of mandamus. (CPLR 7801.) Of the relevant arguments that may be raised in an article 78 proceeding, petitioner contends that respondent failed to “perform a duty enjoined upon [him] by law” (Petition 1i1f 48, 70; CPLR 7803 [1]). Petitioner presents two theories as to why respondent’s “extreme and unsupportable delay of payment” warrants article 78 relief: (1) the delay constitutes a failure to perform a duty that is necessary for compliance with article 18-B and (2) the delay abrogates the constitutional rights of indigent defendants. (Petition 1111 45, 48, 56.) Respondent submits an answer addressing petitioner’s CPLR 7803 (1) argument and further addresses whether respondent’s determination to reduce and delay payment “was arbitrary and capricious or an abuse of discretion.” (CPLR 7803 [3].)
Petitioner’s article 78 motion must be denied because another adequate remedy at law exists. Article 78 relief does not lie *196 when the petitioner has another adequate remedy at law. (See CPLR 7801; see also Matter of Art-Tex Petroleum v New York State Dept. of Audit & Control, 93 NY2d 830, 832 [1999]; Matter of Morgenthau v Roberts, 65 NY2d 749, 751 [1985].) An action for a breach of contract is available for disputing nonpayment of ACP vouchers. (See Wells v State of New York, 267 AD2d 179 [1st Dept 1999] [“These findings support the conclusion that the Plan’s refusal to process claimant’s late vouchers was a breach of contract”].) Here, petitioner has availed himself of such an alternate remedy via the pending breach of contract action for the first notice of claim. However, petitioner has decided not to institute such an action for the second notice of claim. Accordingly, because another adequate remedy exists, this article 78 motion must be denied.
Moreover, because the administrative action of deciding the amount/timing of payment for submitted vouchers involves an exercise of judgment and discretion it cannot be compelled by writ of mandamus. Mandamus to compel is a judicial command to an officer or body to perform a specified ministerial act that is required by law to be performed. (See Matter of Hamptons Hosp. & Med. Ctr. v Moore, 52 NY2d 88, 96 [1981].) In order to succeed in mandamus, the petitioner must show a “clear legal right” to the requested relief; if the right to performance is clouded by “reasonable doubt or controversy,” the petition must be denied. (See e.g. New York Civ. Liberties Union v State of New York, 4 NY3d 175, 184 [2005]; Matter of Association of Surrogates & Supreme Ct. Reporters within City of N.Y. v Bartlett, 40 NY2d 571, 574 [1976].) Only ministerial acts that involve no exercise of judgment or discretion are subject to mandamus to compel. (Matter of Gimprich v Board of Educ. of City of N.Y., 306 NY 401 [1954].) In the case at bar, the payment of the disputed vouchers is not a ministerial act, as 43 RCNY 13-06 provides a great deal of discretion from the initial screening of vouchers through their final submission to the respondent’s office. Therefore, petitioner’s article 78 motion for a writ of mandamus must be denied.
Furthermore, this court finds that respondent did not act in violation of a lawful procedure, arbitrarily, or by abusing its discretion. In Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County (34 NY2d 222, 232 [1974]), the Court of Appeals reiterated, “ Tt is well settled that a court may not substitute its judgment for that of the board or body it reviews unless the *197 decision under review is arbitrary and unreasonable and constitutes an abuse of discretion’ ” (citations omitted). Thus, this court’s role is limited to the determination of whether there was a rational basis for the final determination made by CJC to reduce some of petitioner’s vouchers and to withhold the payment of others pending the results of the audit. (Greystone Mgt. Corp. v Conciliation & Appeals Bd. of City of N.Y., 94 AD2d 614 [1st Dept 1983].)
In the case at bar, there was a rational basis for both the reduction in petitioner’s voucher payments as well as the continuing delays in payment pending the outcome of an investigation. Though petitioner maintains that the delay in payment negatively impacts his ability to maintain a quality law practice, the CJC has clearly established that petitioner failed to adequately address concerns of excessive billing and continued to submit vouchers containing characteristics of excessive billing. Additionally, because the City possesses the right to review AGP vouchers for fraud or abuse, the practice of withholding payment from an attorney participating with the ACP is within the agency’s discretion. (See 43 RCNY 13-06.) Therefore, petitioner has not demonstrated that respondent’s determination was arbitrary or capricious and the requested relief is denied.
As a result of the foregoing, petitioner’s additional arguments with respect to the CJC’s interference with vouchers already approved by the Criminal Court (first notice of claim) as well as petitioner’s constitutional arguments are deemed moot.
Moreover, respondent has averred that the CJC is submitting all of Mr. Dubinsky’s reviewed vouchers to the Comptroller for payment and submitting unreviewed vouchers to Criminal Court for review. Thus, this court finds that CJC’s actions were rational and reasonable and in accordance with the applicable law and regulations. Accordingly, it is hereby, adjudged, that the petition is denied and the proceeding is dismissed.

 The OACP reports to the City’s Criminal Justice Coordinator.