OPINION OF THE COURT
Joseph M. Sise, J.
So that teachers, parents and community members could establish and maintain schools that operate independently of existing schools and school districts, the Legislature enacted the New York Charter Schools Act of 1998 (L 1998, ch 4, § 1). To form a charter school under this Act, an application must be submitted to a charter entity which can either be a board of education, the Board of Trustees of the State University of New York (hereinafter Trustees) or the Board of Regents of the State of New York (hereinafter Regents) (Education Law § 2851 [1], [3]). The charter entity reviews the application and, in the event it makes certain statutorily required findings, can approve it (Education Law § 2852 [2]). Following approval, the applicant and the charter entity enter into a proposed charter which is submitted to the Regents for its review (Education Law § 2852 [5], [5-a]).[1] The Regents can either approve and issue the charter as proposed, or return it to the charter entity for reconsideration with written comments and recommendations (Education Law § 2852 [5-a]). In the event the Regents fails to act within a specified time, the proposed charter is deemed approved by operation of law (Education Law § 2852 [5-a], [5-b]).
In this instance, in the spring of 1999 a community resident filed an application with the Trustees to establish Victory Children’s Academy — Long Island Charter Public School[2] within the Roosevelt Union Free School District (hereinafter District) that is located in Roosevelt, Nassau County. The application was referred to the Charter Schools Institute of the State University of New York (hereinafter CSI), an entity created by the Trustees to assist it in reviewing applications to form charter schools. Following CSI’s extensive review, the Trustees approved the application on January 25, 2000. A proposed charter was entered into and submitted to the *707 Regents. On April 4th, the Regents voted to return the proposed charter to the Trustees for reconsideration citing, inter alia, the severe financial impact on the District. After considering the comments and recommendations of the Regents, the Trustees resubmitted the proposed charter to the Regents. Because the Regents did not approve it within 30 days of its resubmission, it was deemed approved and issued by operation of law on May 26, 2000 (Education Law § 2852 [5-b]). Preparations then commenced to open the Roosevelt Children’s Academy Charter School (hereinafter School) in September 2000 with 147 students enrolled in kindergarten through grade two.[3]
Thereafter, the Board of Education of the District (hereinafter Board) and Mark V. Davis in his individual capacity as a resident and taxpayer of the District[4] commenced a CPLR article 78 proceeding in Nassau County and concomitantly moved for a preliminary injunction enjoining the School from operating within the District. It appears that the parties’ initial procedural step was to enter into a stipulation discontinuing the action against the Regents; however, following a conference with the assigned Justice, an amended verified petition/ complaint adding parties petitioners-plaintiffs and declaratory judgment causes of action challenging the constitutionality of the Charter Schools Act was served and a second stipulation was executed reinstating the Regents as a party respondent-defendant. The proceeding was then transferred to Albany County (CPLR 506 [b] [2]).
The Trustees, CSI and the Regents (hereinafter collectively referred to as the State defendants) responded to the amended pleading by moving to partially dismiss the petition/complaint on the ground the Board lacks capacity to sue them. The Regents also moves to dismiss on the ground it is not a necessary party.
Incapacity to sue exists where there is some legal disability preventing a plaintiff from coming into court (7 Weinstein-Korn-Miller, NY Civ Prac 3211.17). This ground for dismissal is often interposed against a governmental entity which, being an artificial creature of statute, has neither an inherent nor a common-law right to sue another governmental entity (see, Community Bd. 7 v Schaffer, 84 NY2d 148, 155-156). This doc *708 trine of incapacity to sue is not absolute as there are four exceptions, to wit: (1) there is express statutory authority to bring such a suit; (2) the State legislation adversely affects a governmental entity’s proprietary interest in a specific fund of moneys; (3) where the statute impinges upon “Home Rule” powers; and (4) where the entity contends that, if it complies with the statute, it will be forced to violate a constitutional proscription (see, City of New York v State of New York, 86 NY2d 286, 291-292).
Where, as here, there is no explicit statutory authority allowing a governmental entity to bring suit beyond the general power to sue and be sued, such right may be inferred if the entity has “ ‘functional responsibility within the zone of interest to be protected’ ” provided “ ‘there is no clear legislative intent negating review’ ” (Community Bd. 7 v Schaffer, supra, at 156, quoting Matter of City of New York v City Civ. Serv. Commn., 60 NY2d 436, 443-445). In the latter case, the City of New York was permitted to sue the Civil Service Commission because it had functional responsibility for civil service matters in light of its authority and responsibility over civil service appointments (id.). On the other hand, the State Consumer Protection Board was not allowed to sue the Public Service Commission (hereinafter PSC) as it did not have functional responsibility within the zone of interest to be protected given its limited statutory authority within the PSC’s sphere of responsibility (see, Matter of Pooler v Public Serv. Commn., 43 NY2d 750). Likewise, in this case the District’s role is statutorily circumscribed with respect to charter schools as it is merely given the right to comment on the proposed charter and to visit, examine and inspect the operation of a charter school (Education Law § 2853 [2-a]; § 2857 [1]). Accordingly, the court finds that the Board’s right to sue the State defendants cannot be inferred as it does not have functional responsibility for the operation and establishment of charter schools. Moreover, considering that the entire thrust of the Charter Schools Act is to provide charter schools with autonomy from the rules and regulations of existing schools and school districts (Education Law § 2850 [2]), there is no basis for inferring that the Legislature intended to give school districts and their boards the power to challenge the establishment of charter schools.
The Board further argues that the second exception applies since it will lose funds which have been specifically allocated to it if the School is allowed to open. This argument *709 does not withstand analysis. While the Legislature annually budgets sums for the support of schools, the actual amount each school district receives depends on the average daily attendance of pupils in school during the school year and the aggregation of approximately 50 different formulas (Education Law § 3602). Thus, in view of this protocol, the District only has an inchoate right to State aid rather than a proprietary interest in a specific fund of money. Accordingly, the Board does not fall within the second exception (see, County of Albany v Hooker, 204 NY 1, 17-18; Matter of Town of Moreau v County of Saratoga, 142 AD2d 864).
Inasmuch as the Charter Schools Act does not impinge upon “Home Rule” powers and as the Board makes no claim that it or the District will be forced to violate a constitutional proscription if it complies with the Act, the court concludes the Board does not fall within any of the recognized exceptions to the doctrine of incapacity to sue. Hence, the State defendants’ motion pursuant to CPLR 3211 (a) (3) is granted.
In their reply memorandum, the State defendants have raised the argument that the individual petitioners-plaintiffs lack standing under State Finance Law § 123-b to maintain this action. This argument is not properly before the court since the purpose of a reply memorandum is to respond to arguments made in opposition to the relief sought rather than a vehicle for introducing new arguments (see, Lawrence v Esplanade Gardens, 213 AD2d 216; Herzog v Board of Educ., 171 Misc 2d 22, 26). Were the court to consider the argument, it would find that these litigants have standing to maintain this action at least insofar as it seeks declaratory and injunctive relief since their challenge has a sufficient nexus to the fiscal activities of the State (see, Saratoga County Chamber of Commerce v Pataki, 275 AD2d 145; Grumet v Board of Educ., 187 AD2d 16, 20, mod on other grounds 81 NY2d 518; Matter of Cario v Sobol, 157 AD2d 172, 175).
As pointed out, the subject charter was deemed approved and issued by operation of law. Consequently, since the Regents did not perform any act with respect to the issuance of the charter, and as complete relief can be afforded the parties without the Regents’ presence given the Trustees’ authority to terminate a charter (Education Law § 2855 [1]), the Regents is not a necessary party (see, Matter of Town of Wallkill v New York State Bd. of Real Prop. Servs., 274 AD2d 856; see also, CPLR 1001 [a]). In view of these circumstances, the Regents’ motion pursuant to CPLR 3211 (a) (7) is granted.
*710 The court will next consider petitioners-plaintiffs’ motion for a preliminary injunction enjoining, inter alia, the School from operating within the District. To obtain this relief, movants must establish the likelihood of ultimate success on the merits, irreparable injury and a balancing of equities in their favor (see, Ulster Home Care v Vacco, 255 AD2d 73). In addition, a preliminary injunction will generally not issue, absent extraordinary circumstances, if the status quo would be disturbed and the movant would thereby receive the ultimate relief requested (see, MacIntyre v Metropolitan Life Ins. Co., 221 AD2d 602; Longfield v Ronk, 122 AD2d 409). Now that the School has opened,[5] forcing it to cease operation not only would disturb the status quo, it would provide the movants with the ultimate relief they are seeking.
Aside from this factor, the movants have not satisfied the three-prong test for a preliminary injunction. Taking into account the fact the State’s educational financing system has survived several constitutional challenges (Reform Educ. Fin. Inequities Today v Cuomo, 86 NY2d 279; Board of Educ. v Nyquist, 57 NY2d 27) and as such system will be upheld if supported by a rational basis (Reform Educ. Fin. Inequalities Today v Cuomo, supra, at 285), the likelihood that the movants will overcome the strong presumption of constitutionality of the Charter Schools Act is not readily apparent. Likewise the likelihood of their success on the merits with respect to the CPLR article 78 proceeding is far from certain in light of the extensive review process the School’s application was subjected to and the limited findings necessary for the approval of a charter school application (Education Law § 2852 [2]).
Irreparable harm is injury that is neither remote nor speculative, but actual and imminent (see, Forest City Daly Hous. v Town of N. Hempstead, 175 F3d 144, 153; Siegel, NY Prac § 328, at 499 [3d ed]). The movants claim that they will suffer such harm since the District’s ability to provide educational opportunities to its students will be diminished due to the loss of State aid it will experience when the School opens. The State defendants challenge this claim, pointing out that their analysis of the District’s budget shows that the expected revenue loss can be offset by cost savings. Further, they state the District will not experience an immediate total loss of State aid *711 since it is paid in six installments during the school year. The presence of these factors casts significant doubt on the movants’ claim that they face actual and imminent harm if the injunction is not granted, thereby negating their claim of irreparable injury.
Lastly, now that the School is open, the balancing of the equities does not favor the movants since the disruption caused to the pupils and staff of the School if it is forced to close greatly outweighs the movants’ speculative and conclusory claims of financial harm.
Having disposed of the preanswer motion, the State defendants are directed to serve their answer on or before October 6, 2000 and all parties shall have until October 27, 2000 to serve memoranda with reply memoranda to be served on or before November 8, 2000.

. If the Regents is the charter entity, this step is omitted (Education Law § 2852 [5]).

. This name was subsequently changed to Roosevelt Children’s Academy Charter School to conform with Education Law § 2851 (2) (k).

. As of August 30, 2000, 128 students were enrolled, of which 115 are from the District.

. Davis is also the president of the Board.

. The record shows the School opened on September 11, 2000.