[723 NYS2d 262]

In the Matter of BOARD OF EDUCATION OF THE ROOSEVELT UNION FREE SCHOOL DISTRICT et al., Appellants, v BOARD OF TRUSTEES OF THE STATE UNIVERSITY OF NEW YORK et al., Respondents.

Third Department, April 19, 2001

## APPEARANCES OF COUNSEL

*Jaspan, Schlesinger & Hoffman, L. L. P.,* Garden City (*Stanley A. Camhi* of counsel), for appellants.

*Eliot Spitzer, Attorney General,* Albany (*Alicia R. Ouellette* of counsel), for Board of Trustees of the State University of New York and others, respondents.

### OPINION OF THE COURT

CARPINELLO, J.

This combined CPLR article 78 proceeding and declaratory judgment action stems from the issuance of a charter permitting respondent Roosevelt Children's Academy Charter School, Inc. (hereinafter the Academy Charter School) to organize and operate a charter school within the geographic boundary of the Roosevelt Union Free School District (hereinafter the District). Petitioner Board of Education of the District (hereinafter the School Board), as well as certain taxpayers, residents and students within the District, allege that respondent Board of Trustees of the State University of New York (hereinafter the SUNY Trustees) acted arbitrarily and capriciously when it approved the application for the Academy Charter School and further assert that the New York Charter Schools Act of 1998 (L 1998, ch 4, § 1), the statutory scheme authorizing a system of charter schools in this State, is unconstitutional. Respondents moved to dismiss the School Board as a party on the ground that it lacked capacity to sue pursuant to CPLR 3211 (a) (3). They also moved to dismiss respondent Board of Regents as a party respondent on the ground that it was not a proper party. Supreme Court granted both motions and further denied petitioners' application for a preliminary injunction enjoining the opening and/or operation of the Academy Charter School (185 Misc 2d 704). Petitioners appeal.

Before addressing the merits of the legal issues before this Court, a brief overview of the parties and the Charter Schools Act itself is warranted. The School Board is the governing body of the District, which is located in Nassau County. The District consists primarily of minority students and has been plagued with curriculum and financial problems since, at least, 1995 warranting significant State intervention (*see,* L 1995, ch 145). It has been operating on an austerity budget since, at least, 1999. The School Board steadfastly maintains that the operation of a charter school within the District's boundaries will exacerbate its financial problems and will have a devastating impact upon the District's ability to provide educational programs and services to those students who continue to be enrolled in its public schools. This loss, the School Board claims, cannot be remedied by imposing a tax increase on the

District's residents, who are purportedly unable or unwilling to afford the projected 13% increase that would be required to make up for the net loss of revenue caused by the operation of the Academy Charter School. Thus, the School Board claims that it will be forced to eliminate or reduce certain programs, services and staff as a result of the operation of the Academy Charter School, which will, in turn, adversely affect the learning and achievement of those students who remain in the District's schools. The Academy Charter School first submitted its application to operate a school within the District in the spring of 1999. It was anticipated at that time that the school would open that September and accommodate approximately 250 kindergarten through second grade students, many of whom would come from within the District. By the time its application was finally approved by the SUNY Trustees and its charter issued, the school did not open until September 2000. As of August 31, 2000, it had 128 enrolled students, 115 of which were from the District.

The SUNY Trustees is the "charter entity" to which the Academy Charter School submitted its application. Indeed, under the statutory scheme, such an application may be submitted to any one of three charter entities, namely, the board of education of the school district within which a charter school proposes to operate (or the Chancellor in New York City), the SUNY Trustees or the Board of Regents (*see*, Education Law § 2851 [3]). However, the Board of Regents is "the only entity authorized to issue a charter" (Education Law § 2851 [3] [c]). Under the statutory scheme, an applicant must include in its application "[e]vidence of adequate community support for and interest in the charter school sufficient to allow the school to reach its anticipated enrollment, and an assessment of the projected programmatic and fiscal impact of the school on other public and nonpublic schools in the area" (Education Law § 2851 [2] [q]). Here, the School District claims that the application contained insufficient evidence of community support and inaccurate representations about the financial consequences that the Academy Charter School would have on it and its residents.

"Upon approval of an application by a charter entity, the applicant and charter entity shall enter into a proposed agreement allowing the applicants to organize and operate a charter school" (Education Law § 2852 [5]); this agreement is itself the "charter." Within five days of entering into that charter, the charter entity must submit a copy of it, the application and

any supporting documentation "for final approval and issuance by the [B]oard of [R]egents" (Education Law § 2852 [5]); notably, however, the "authority" of the Board of Regents to "approve" a proposed charter is circumscribed by Education Law § 2852 (5-a) and (5-b). Suffice it to say, although the statutory scheme mandates that the Board of Regents be given an opportunity to review a proposed charter entered into by another charter entity, there is no authority for the Board of Regents to actually reject or veto such charter (*but see*, Education Law § 2851 [3] [c]).

Rather, upon receipt of a charter, the Board of Regents has the option of approving it as proposed or returning it to the charter entity for reconsideration with written comments and recommendations (*see*, Education Law § 2852 [5-a]). If the Board of Regents fails to act within 60 days of this initial submission, the charter is "deemed to have been approved and issued by the [B]oard of [R]egents at the expiration of such period" (Education Law § 2852 [5-a]). If the Board of Regents returns a proposed charter with comments and recommendations, the charter can be resubmitted.[1] The Board of Regents must then "review each such resubmitted proposed charter in accordance with [Education Law § 2852 (5-a)]; *provided, however*, that it shall be the duty of the [B]oard of [R]egents to approve and issue a proposed charter resubmitted by the charter entity * * * within thirty days of the resubmission of such proposed charter or such proposed charter shall be deemed approved and issued at the expiration of such period" (Education Law § 2852 [5-b] [emphasis supplied]).

Here, the SUNY Trustees approved the subject application on June 15, 1999, entered into a proposed charter with the Academy Charter School in the spring of 2000 and then forwarded that proposed charter to the Board of Regents in accordance with the statute. The Board of Regents returned it on April 6, 2000 for reconsideration, with comments and recommendations. One of the primary areas of concern for the Board of Regents was the programmatic and fiscal impact that the Academy Charter School would have on the District. It specifically found that the information provided was inaccurate and

---

1. When the Board of Regents returns a proposed charter to a charter entity, that charter entity has three options available to it at that time, namely, it can resubmit the proposed charter with modifications that have been agreed to by the applicant, it can resubmit the proposed charter with no modifications whatsoever or it can abandon the proposed charter (*see*, Education Law § 2852 [5-b]).

that the application did not meet the requirements of Education Law § 2851 (2) (q). It outlined its own analysis of the fiscal impact on the District, which it proposed would be quite substantial. Following resubmittal of the proposed charter by the SUNY Trustees, the Board of Regents voted to take no action; thus, the proposed charter was deemed approved and issued by operation of law (see, Education Law § 2852 [5-b]).

With this background, we turn to the issue of whether the School Board has capacity to sue in this matter. In our view, whether the School Board has the capacity to commence a CPLR article 78 proceeding to challenge the administrative determination of the SUNY Trustees approving the Academy Charter School's application and entering into the subject charter is a separate and distinct issue from whether it also has the capacity to sue to invalidate the Charter Schools Act itself on constitutional grounds. In analyzing each separately, we are compelled to find that, while the School Board does have the capacity to challenge the administrative determination of the SUNY Trustees as arbitrary and capricious, it does not have the capacity to mount a constitutional challenge to the Charter Schools Act. Each will be addressed seriatim.

The right of a governmental agency "to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate" (Community Bd. 7 v Schaffer, 84 NY2d 148, 156) or "may be inferred when the agency in question has 'functional responsibility within the zone of interest to be protected'" (id., at 156, quoting Matter of City of New York v City Civ. Serv. Commn., 60 NY2d 436, 445; see, Matter of New York State Bd. of Examiners of Sex Offenders v Ransom, 249 AD2d 891; Matter of Queens Hosp. Ctr. Community Advisory Bd. v New York City Health & Hosps. Corp., 227 AD2d 147, lv denied 88 NY2d 814). In our view, the right of a board of education of a school district to commence a CPLR article 78 proceeding challenging an administrative determination to approve a charter school application and issue a charter within a school district's boundaries can be inferred as part of the school board's duty and responsibility to provide a system of public education to all children within its district (see, Education Law §§ 1709, 3202), particularly where, as here, a school board claims that its ability to provide education to all students within its district's boundaries is jeopardized by the determination, and the charter entity allegedly gave insufficient consideration to the issue of economic impact on the school district. Specifically, the School Board contends that irrepar-

able harm will ensue if it loses the estimated $1.2 to $1.7 million per year to the Academy Charter School and that this economic impact will hinder its ability to provide educational services and programs to all other students in the District.

Under these circumstances, only a clear legislative intent to negate judicial review of the administrative determination will deprive the School Board of the capacity to sue (*see, Matter of City of New York v City Civ. Serv. Commn., supra,* at 443). In addition to Education Law § 1709 (33), which generally grants the School Board the power, authority and responsibility to administer the educational affairs of the District, certain aspects of the Charter Schools Act itself convince us that the Legislature did not intend to prevent a school board from challenging an administrative decision to grant a charter. First, an assessment of the projected programmatic and fiscal impact on the other public and nonpublic schools in the area of the charter school must be provided in the application (*see,* Education Law § 2851 [2] [q]). Moreover, the statute contains a "Notice; review and assessment" section (Education Law § 2857), which mandates that a school district be notified "[a]t each significant stage of the chartering process," be "given an opportunity to comment on the proposed charter to the charter entity [prior to the issuance of a charter]" and be permitted to "hold a public hearing to solicit comments from the community in connection with the [issuance of the charter]" (Education Law § 2857 [1]). We further note that, while the Charter Schools Act expressly prohibits an *applicant* from seeking judicial or administrative review of the denial of an application (*see,* Education Law § 2852 [6]), no corollary prohibition exists preventing a school district or school board from seeking review of the determination to grant an application and issue a charter.

We reach a different conclusion however on the School Board's attempt to mount a constitutional attack on the Charter Schools Act itself. We note that a school district, as a creature and subdivision of the State, generally lacks the capacity to mount a constitutional challenge to invalidate State legislation (*see, City of New York v State of New York,* 86 NY2d 286, 289; *Gulotta v State of New York,* 228 AD2d 555, 556, *appeal dismissed* 88 NY2d 1053, *lv denied* 89 NY2d 811). While there are four exceptions to this general rule, only one was raised by the School Board before Supreme Court, namely, that the Charter Schools Act "adversely affects [its] proprietary interest in a specific fund of moneys" (*City of New York v State*

*of New York, supra*, at 291-292).[2] Here, the School Board argues that it is attempting to preserve money that has been specifically appropriated to it under Education Law § 3602 and that its right to these funds is more than a mere hope or expectancy. In support of this position, it points out that under the statutory scheme, it is required to pay the Academy Charter School directly for each student enrolled in the charter school that resides in its District (*see*, Education Law § 2856 [1]). We are unpersuaded.

Education Law § 3602, which details the apportionment and distribution of funds to school districts, provides that the District's right to receive funds is dependent on the daily attendance figures of those pupils within its public schools. As attendance varies, so does the specific amount due the District as each school year progresses (*see*, Education Law § 3602). Accordingly, we find that the School Board has not demonstrated that the Charter Schools Act affects any proprietary interest in a specific sum of money (*cf.*, *County of Rensselaer v Regan*, 173 AD2d 37, *affd* 80 NY2d 988; *Matter of City of New York v Lawton*, 128 AD2d 202). Even though the Charter Schools Act contemplates that the State will initially fund money to the District which, in turn, will distribute it to the Academy Charter School depending on the number of students enrolled in that school (*see*, Education Law § 2856 [1]), we find nothing in this funding mechanism which creates a proprietary interest in the District to a specific sum of money where none otherwise existed. Simply stated, the funding follows the child and if the child does not attend one of its public schools, the District has no right to the funds.

We next turn to the propriety of Supreme Court's decision to drop the Board of Regents as a party in this matter. While the question of whether the Board of Regents is a necessary party should be seemingly straightforward, an inherent inconsistency in the statute clouds the issue. The School Board persuasively argues that, since Education Law § 2851 (3) (c) states that the Board of Regents is the "only" body authorized to issue a charter, logic would dictate that it is "an appropriate party" to any proceeding challenging the propriety of a charter. While the language of this provision would appear to support the allegation that the determination sought to be reviewed is that of the *Board of Regents*, thus making it a proper and necessary party (*see, e.g.*, *Matter of Brignoni v Abrahamson*, 278

---

**2.** Even if the School Board had raised the other three exceptions before Supreme Court, we would find that none is applicable.

AD2d 565, 566-567 [CPLR article 78 proceeding cannot proceed in the absence of the governmental agency that effected the action under review]), in actuality the Board of Regents is *powerless* under the Charter Schools Act to reject or to veto a proposed charter submitted to it by the SUNY Trustees. Said differently, once a proposed charter is entered into between an applicant and the SUNY Trustees, the issuance of the charter itself is a fait accompli even where, as here, the Board of Regents may initially disapprove of some aspects of the application.

Here, in fact, it can be stated with some certainty that the Board of Regents is aligned with petitioners on certain aspects of their CPLR article 78 proceeding. Indeed, upon review of the amended petition/complaint, it is clear that petitioners do not take issue with any specific act or omission on the part of the Board of Regents in this case (*see, Matter of Town of Wallkill v New York State Bd. of Real Prop. Servs.*, 274 AD2d 856, *lv denied* 95 NY2d 770; *Joanne S. v Carey*, 115 AD2d 4, 9). Rather, every allegation of arbitrary and capricious conduct is directed solely at the SUNY Trustees.[3] To this end, we note that petitioners *had alleged* in their original petition that "[i]n the event the charter is issued or deemed issued by the *[Board of] Regents*, it is based upon a determination which was arbitrary and capricious" (emphasis supplied); however, they have since abandoned this position in the amended petition/complaint.[4]

Simply stated, no factual allegation or showing has been made that the Board of Regents played a "substantial role in the *injury* to petitioners" (*Matter of Jerry v Board of Educ.*, 44 AD2d 198, 205, *mod on other grounds* 35 NY2d 534 [emphasis supplied]; *see, Dubendorf v New York State Educ. Dept.*, 97 Misc 2d 382, 388, *mod on other grounds* 71 AD2d 837, *lvs dismissed* 48 NY2d 608, 829) or that the Board of Regents was primarily responsible for the determination to approve the subject application or issue the charter (*see, Matter of Town of Wallkill v New York State Bd. of Real Prop. Servs., supra; Matter of Koss, Inc. v Regan*, 149 AD2d 785, 787; *Joanne S. v Carey*,

---

**3.** In essence, petitioners claim that the *SUNY Trustees* acted arbitrarily and capriciously in approving the Academy Charter School's application without first making findings required by Education Law § 2852 (2) and that the *SUNY Trustees* failed to meaningfully consider and independently evaluate the financial impact on the District.

**4.** In the amended petition/complaint, petitioners instead allege that in the event the charter was issued by operation of law, issuance was based on an arbitrary and capricious determination by the *SUNY Trustees*.

*supra*). Moreover, notwithstanding its role in the process, there has been an unconvincing showing that the Board of Regents' participation is necessary for a complete resolution of the matter or that it will be inequitably affected by any possible resolution (*see,* CPLR 1001; *Matter of Meyer v Board of Educ.*, 182 AD2d 873, 875; *Matter of Koss, Inc. v Regan, supra*; *Matter of McSweeney v Board of Educ.*, 138 AD2d 847, 847-848; *Joanne S. v Carey, supra*). For all these reasons, it was properly dismissed as a party.

As a final matter, we find no abuse of discretion in Supreme Court's denial of petitioners' application for a preliminary injunction in this matter.

MERCURE, J. P., PETERS, SPAIN and ROSE, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as granted respondents' motion dismissing petitioner Board of Education of the Roosevelt Union Free School District as a party in the CPLR article 78 proceeding; deny the motion to that extent; and, as so modified, affirmed.