[40 NYS3d 7]

MIRIAM ARISTY-FARER et al., Respondents, v STATE OF NEW YORK et al., Appellants.

NEW YORKERS FOR STUDENTS' EDUCATIONAL RIGHTS ("NYSER") et al., Respondents, v STATE OF NEW YORK et al., Appellants.

NEW YORKERS FOR STUDENTS' EDUCATIONAL RIGHTS ("NYSER") et al., Plaintiffs, and CITY OF YONKERS, Intevenor-Respondent, v STATE OF NEW YORK et al., Appellants.

First Department, September 8, 2016

**APPEARANCES OF COUNSEL**

*Eric T. Schneiderman, Attorney General*, New York City (*Andrew W. Amend, Denise A. Hartman, Steven C. Wu* and *Philip V. Tinse* of counsel), for appellants.

*The Law Office of Michael A. Rebell*, New York City (*Michael A. Rebell* of counsel), for respondents.

*Morgan, Lewis & Bockius LLP*, New York City (*Douglas T. Schwarz* and *John A. Vassallo, III* of counsel), for New Yorkers for Students' Educational Rights, respondent.

*Michael V. Curti, Corporation Counsel*, Yonkers (*Hiran Sherwani* and *Matthew Gallagher* of counsel), for the City of Yonkers, respondent.

**OPINION OF THE COURT**

Tom, J.P.

In these three consolidated appeals, plaintiffs in the *Aristy-Farer* and *New Yorkers for Students' Educational Rights ("NYSER")* (*NYSER*) actions contend, inter alia, that the state defendants have continued to deprive New York City public school students of the opportunity to obtain a sound basic education (NY Const, art XI, § 1) by failing to comply with school funding directives set by the Court of Appeals in the *Campaign for Fiscal Equity* cases (discussed below). The City of Yonkers was granted leave to intervene in the *NYSER* action as a party plaintiff.

A short recitation of the *Campaign for Fiscal Equity* cases is necessary to provide the procedural history leading up to the present actions. In 1993, the Campaign for Fiscal Equity, Inc., an educational advocacy group, and various other plaintiffs consisting of 14 of New York City's 32 school districts and individual students who attended New York City public schools and their parents, commenced an action seeking a judgment declaring that the State's system for financing education deprived New York City public school students of the opportunity to receive a sound basic education in violation of the Education Article of the New York Constitution (art XI, § 1).

In *Campaign for Fiscal Equity v State of New York* (86 NY2d 307 [1995] [*CFE I*]), the Court of Appeals held that the plaintiffs had stated a cause of action under the Education Article by alleging "gross educational inadequacies that, if proven, could support a conclusion that the State's public school financing system effectively fails to provide for a minimally adequate educational opportunity" (*CFE I*, 86 NY2d at 319).

Following a trial on the plaintiffs' claims, the Court of Appeals upheld the trial court's finding that the plaintiffs had proven their claims under the Education Article, and directed the State to ensure, by means of "[r]eforms to the current system of financing school funding and managing schools . . . that every school in New York City would have the resources necessary for providing the opportunity for a sound basic education" (*Campaign for Fiscal Equity v State of New York*, 100 NY2d 893, 930 [2003] [*CFE II*]).

Then, in *Campaign for Fiscal Equity, Inc. v State of New York* (8 NY3d 14 [2006] [*CFE III*]), the Court held that the State's proposed State Education Reform Plan to provide adequate funding to New York City schools was not unreason-

able, and declared that the constitutionally required funding of the New York City School District included additional operating funds in the amount of $1.93 billion, adjusted for inflation since 2004. This figure was extrapolated from a statewide sum of $2.45 billion (*see CFE III*, 8 NY3d at 23-24, 27, 30).

In 2007, as part of the Budget and Reform Act of 2007 (the 2007 Reform Act) (codified at Education Law § 3602), the State promulgated a four-year plan to implement the constitutional reforms mandated by *CFE III*. The State created a new program, Foundation Aid, which established a new formula for calculating state operating aid to school districts. The Foundation Aid formula (Education Law § 3602 [4] [a]), which is extremely complex, has four basic components: (1) a base per-pupil amount, based on amounts spent on students in "successful" school districts (Education Law § 3602 [4] [a] [1]); modified by (2) a regional cost index (Education Law § 3602 [4] [a] [2]) and (3) a pupil-need index for additional costs for high-need students (Education Law § 3602 [4] [a] [3]); (4) less the "expected minimum local contribution," itself the product of factors including the wealth of the locality (Education Law § 3602 [4] [a] [4]); there is in addition a "[p]hase-in foundation increase" (Education Law § 3602 [4] [b]).

The 2007 Reform Act called for total annual statewide foundation funding to increase by a cumulative total of $5.49 billion over four years, as follows: 2007-2008, $1.1 billion; 2008-2009, $1.24 billion; 2009-2010, $1.5 billion; 2010-2011, $1.65 billion.

The Foundation Aid monies provided for under the 2007 Reform Act were fully distributed in school years 2007-2008 and 2008-2009. Following the 2008 recession, however, the State faced a $20.1 billion shortfall for the 2009-2010 budget. In April 2009, it closed that gap through a package of tax increases and broad spending cuts. The State froze Foundation Aid levels, eliminating the planned increase for 2009-2010.

In 2010, the State went further, reducing aid for 2010-2011 through the gap elimination adjustment (GEA) (*see* Education Law § 3602 [17]). The GEA apportioned reductions in aid among school districts according to factors that included wealth and student need. After factoring in federal stimulus funding, the GEA resulted in a net reduction in education aid for 2010-2011 of $740 million. The GEA was subsequently extended, and then made permanent, with a $2.6 billion reduction in statewide aid for 2011-2012 and total cumulative reductions of about $4 billion through 2013-2014.

For the 2011-2012 budget, the legislature enacted the "allowable growth amount," which limited increases in state aid to education to no more than the increase in the personal income of the State for the preceding year (*see* Education Law § 3602 [1] [aa]-[gg]; [18]).

For 2012-2013, the legislature established a "property tax cap," which required a 60% vote of a school district's voters to approve a tax levy increase in the district's education funding that exceeded the lesser of 2% of the previous year's increase or the increase in the national consumer price index (*see* Education Law § 2023-a [2] [i]; [6]).

Plaintiffs in the *Aristy-Farer* action are parents of New York City schoolchildren, and defendants are the State of New York, the Governor of New York, and the President of the University of the State of New York. The *Aristy-Farer* plaintiffs allege in their first cause of action that underfunding of the New York City School District by billions of dollars—including a $290 million penalty imposed on the New York City School District for failure to comply with the requirement under the Annual Professional Performance Review (APPR) and penalty provisions of the Education Law to submit documentation to show that it had fully implemented new standards and procedures for conducting annual professional performance reviews by January 17, 2013—violates the Education Article by depriving students of the opportunity for a sound basic education. The *Aristy-Farer* plaintiffs' second and third causes of action assert substantive due process and equal protection challenges based on the State's withholding of penalty funds due to the APPR and penalty provisions of the Education Law.

Plaintiffs in the the *NYSER* action are individual parents of children in a number of school districts, led by New Yorkers for Students' Educational Rights (NYSER), an educational advocacy group whose members include the named individual plaintiffs, school districts and community education councils and other educational advocacy groups, including the New York State PTA, representing hundreds of thousands of parents. These plaintiffs sued the State of New York, the Governor of New York, the President of the University of the State of New York, and the New York State Board of Regents. The *NYSER* plaintiffs set forth four causes of action seeking declaratory and injunctive relief. They too assert that underfunding of school districts throughout New York State by billions of dollars violates the Education Article by depriving students of the

opportunity for a sound basic education. The first cause of action alleges that the State has failed to comply with the *CFE* decisions. The second cause of action alleges that, through funding cuts, the State is breaching its constitutional duty to provide students with a sound basic education as required by the Education Article. The third cause of action alleges that the State is breaching its duty under the Education Article to track changes in fiscal and educational conditions by maintaining an appropriate "system of accountability" and to respond appropriately by revising state funding formulas and recommending changes to school districts. The fourth cause of action alleges generally that the State has breached its duty under the Education Article to provide students with a sound basic education.

The City of Yonkers contends that it has a right to intervene in the *NYSER* action as a party plaintiff, because it "has a real and substantial interest in ensuring that [its] students' opportunities for a sound basic education are properly and equitably funded."

Supreme Court denied defendants' motions to dismiss the complaints pursuant to CPLR 3211 (2014 NY Slip Op 33763[U] [Sup Ct, NY County 2014]; 2014 NY Slip Op 32930[U] [Sup Ct, NY County 2014]), and these appeals ensued. We agree with Supreme Court that the *Aristy-Farer* and *NYSER* complaints state claims under the Education Article. However, we find certain causes of action in the complaints failed to state a claim and should be dismissed, and we modify the orders on appeal accordingly.

As a threshold matter, the State contends that the City of Yonkers, as well as the school districts and school boards that comprise some of NYSER's membership, lack capacity to sue the State. The State also contends that NYSER lacks standing and that no *NYSER* plaintiff has standing to assert a claim relating to any district other than the seven school districts in which the individually named plaintiffs reside.

The capacity to sue or be sued concerns a litigant's power to bring a grievance to the court, while standing involves whether the litigant has suffered an injury in fact and thus has an actual legal stake in the matter (*see Silver v Pataki*, 96 NY2d 532, 537-539 [2001]). In *City of New York v State of New York* (86 NY2d 286 [1995]), the Court of Appeals held that municipalities lack capacity to bring an Education Article claim against the State unless certain exceptions apply. These exceptions are:

"(1) an express statutory authorization to bring such a suit; (2) where the State legislation adversely affects a municipality's proprietary interest in a specific fund of moneys; (3) where the State statute impinges upon Home Rule powers of a municipality constitutionally guaranteed under article IX of the State Constitution; and (4) where the municipal challengers assert that if they are obliged to comply with the State statute they will by that very compliance be forced to violate a constitutional proscription" (86 NY2d at 291-292 [citations and internal quotation marks omitted]).

The City of Yonkers maintains that it has capacity to sue under the second of the above exceptions, asserting that the educational funding cuts have deprived it of a proprietary interest in the Foundation Aid monies calculated to be apportioned to it by formula pursuant to the 2007 Budget and Reform Act. This argument is unpersuasive.

Contrary to Yonkers's contention, the proprietary interest exception does not apply where a municipality has "a mere hope or expectancy" of receiving funds (*Matter of Board of Educ. of Roosevelt Union Free School Dist. v Board of Trustees of State Univ. of N.Y.*, 282 AD2d 166, 173 [3d Dept 2001]), but instead "relate[s] to funds or property of a municipal corporation in its possession or to which it had a right to immediate possession" (*County of Albany v Hooker*, 204 NY 1, 16 [1912]). The Foundation Aid monies provided for under the 2007 Budget and Reform Act (codified in Education Law § 3602) are the product of a complex formula that turns on the application of numerous variables, including things like a school district's "daily attendance figures" (*Roosevelt Union*, 282 AD2d at 173). Sums allocated pursuant to the formula therefore vary from year to year. Moreover, any sums provided for by Foundation Aid must themselves be the subject of a separate budgetary appropriation; absent such appropriation, they do not exist (*see* State Finance Law §§ 4 [1]; 40 [2] [a]). Thus, the Foundation Aid formula does not create any "specific sum of money" that would "create[ ] a proprietary interest" in any school district (*Roosevelt Union*, 282 AD2d at 173).

In fact, in *City of New York*, the Court of Appeals held that the municipal plaintiffs "lack[ed] a proprietary interest in a fund or property to which their claims relate and [could not] ground capacity to sue on that basis" (*City of New York*, 86 NY2d at 295). The Court explained:

"Finding a proprietary interest of the City of New York sufficient to confer capacity to sue without regard to a cognizable right in a specific fund would create a municipal power to sue the State in any dispute over the appropriate amount of State aid to a governmental subdivision or the appropriate State/local mix of shared governmental expenses. The narrow proprietary interest exception would then ultimately swallow up the general rule barring suit against the State by local governments" (*id.*).

■ Hence, no "specific sum of money" exists in which the City of Yonkers would have a proprietary interest for purposes of its educational funding challenge. Accordingly, the City of Yonkers's motion to intervene in the *NYSER* action should be denied.

■ Although some of NYSER's constituent members—school districts and school boards—lack capacity to sue the State on their own, NYSER itself has the capacity to sue as an association, given the undisputed capacity of some of its other members—namely the individual named plaintiffs in the *NYSER* action (*see New York State Assn. of Small City School Dists., Inc. v State of New York*, 42 AD3d 648, 649 [3d Dept 2007]).

As to standing, the State concedes that individual parent and student plaintiffs have standing to sue, at least as to alleged educational deficiencies in the school districts where the children are enrolled. In the *NYSER* appeal, however, the State asserts that NYSER lacks standing and that no *NYSER* plaintiff has standing to assert a claim relating to any district other than the seven school districts in which the individually named plaintiffs reside. The State contends that the *NYSER* plaintiffs' claims should be dismissed except as they relate to those seven districts.

"To establish standing, an organizational plaintiff . . . must show that at least one of its members would have standing to sue, that it is representative of the organizational purposes it asserts and that the case would not require the participation of individual members" (*New York State Assn. of Nurse Anesthetists v Novello*, 2 NY3d 207, 211 [2004]). NYSER has associational standing to sue by virtue of the fact that the individual named plaintiffs are also members of NYSER. The State does not argue that NYSER is not "representative of the organiza-

tional purposes it asserts" or that the *NYSER* case would otherwise require the individual plaintiffs to participate.

■ Also significant is that one of NYSER's constituent members is the New York State PTA, which is alleged to be comprised of "hundreds of thousands" of parents from 1,600 "local units and councils" across the State of New York. The State tacitly concedes that the State PTA thus confers standing upon NYSER as to all districts in which State PTA constituent parent members reside. The State asserts, however, that the *NYSER* complaint "does not identify any particular districts whose schools such students attend," and maintains that the complaint should thus be dismissed as it relates to any district other than the nine in which the individual plaintiffs reside. We find that, at this early stage of the action, on a motion to dismiss, it is not necessary to determine which school districts have resident parent or student plaintiffs and are thus directly involved in the action for standing purposes. Crediting the *NYSER* complaint's allegations, the State PTA will likely have members residing in hundreds of districts.

Turning to the adequacy of the complaints pursuant to CPLR 3211, and accepting the allegations as stated, we must begin with a review of the *Campaign for Fiscal Equity* cases, discussed above, and the subsequent legislative actions, upon which plaintiffs' claims are premised. The New York Constitution's Education Article requires the legislature to "provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated" (NY Const, art XI, § 1). The Education Article mandates that the opportunity for a sound basic education be provided to all children (*see Board of Educ., Levittown Union Free School Dist. v Nyquist*, 57 NY2d 27, 48 [1982]), and imposes this obligation upon the legislature (*see Donohue v Copiague Union Free School Dist.*, 47 NY2d 440, 443 [1979]). However, we note that the remedy in *Campaign For Fiscal Equity* was imposed only with respect to the New York City School District rather than being applicable on a statewide basis, notwithstanding that the State's pending plan was devised to have statewide effect.

The *NYSER* plaintiffs' first cause of action alleges that the State has failed to provide the level of education funding endorsed by the *CFE III* Court as the minimum level of funding required by the Education Article. The State argues that plaintiffs may not premise an educational funding claim on alleged failures to comply with funding levels endorsed by the

*CFE III* Court and implemented through the 2007 Budget and Reform Act. Specifically, the State contends that its funding statutes did not establish a consitutional floor for education funding. The State also contends that *CFE III* set a floor for New York City only, not for the State as a whole.

In *CFE III*, the Court "declare[d] that the constitutionally required funding for the New York City School District includes additional operating funds in the amount of $1.93 billion, adjusted with reference to the latest version of the GCEI* and inflation since 2004" (*CFE III*, 8 NY3d at 31). The $1.93 billion figure was extrapolated from a statewide sum of $2.45 billion (*see id.* at 23-24, 27).

As noted, through the 2007 Budget and Reform Act, the State promulgated a four-year plan to increase educational aid to meet the constitutional minimum declared by the Court of Appeals. Educational aid was to be apportioned among the districts through the detailed Foundation Aid formulas. The 2007 Reform Act called for total annual statewide foundation funding to increase by a cumulative total of $5.49 billion over four years (much more than the $1.93 billion sum ratified by the Court of Appeals), as follows: 2007-2008, $1.1 billion; 2008-2009, $1.24 billion; 2009-2010, $1.5 billion; 2010-2011, $1.65 billion.

The legislature met the first two years of spending increases, for a total addition of $2.34 billion—more than the $1.93 billion number endorsed by the Court of Appeals for the New York City (NYC) School District. The later years' spending increases were deferred, however, and a series of further cost-saving measures—the GEA, the allowable growth cap, the property tax cap, and the APPR—were implemented. The parties dispute whether the net effect of the cost-saving measures has been to reduce educational aid below the $1.93 billion floor.

Although the *CFE III* Court emphasized that its holding was based on the record before it (*see CFE III*, 8 NY3d at 27), and the Court was certainly aware that educational spending needs would change from year to year, the *CFE III* Court's core holding was an unambiguous declaration that the State Constitution required education spending to be at least $1.93 billion higher for the City of New York (and, by extension, at least $2.45 billion statewide). The Court clearly intended this number to serve as a floor for at least four years. Indeed, the

---

* The GCEI is the Geographic Cost of Education Index, provided by the National Center for Education Statistics (*CFE III*, 8 NY3d at 23).

Court let stand this Court's directive, on the intermediate appeal in *CFE III*, that additional education aid spending be " 'phased in over four years' " (*CFE III*, 8 NY3d at 26 and n 4, quoting *Campaign for Fiscal Equity, Inc. v State of New York*, 29 AD3d 175, 191 [1st Dept 2006] [modifying First Department order to reduce spending floor but not disturbing four-year phase-in provision]). And the Court directed that future years' spending be based on the $1.93 billion sum, but adjusted each year for "inflation since 2004" (*CFE III*, 8 NY3d at 27).

Therefore, given the clarity of the Court of Appeals' declaration, and its built-in provision for annual updating for inflation by reference to a specified inflation index (the GCEI), the $1.93 billion figure stands as a constitutional minimum that the State must meet, and that it may be compelled to meet through litigation.

■ Consequently, the *NYSER* plaintiffs' first cause of action, premised on the State's alleged failure to comply with *CFE* funding mandates, adequately states a claim. Specifically, NYSER plausibly alleges that the net effect of changes in educational funding has been to drop total state education aid below the *CFE* floor. In addition, to the extent the *Aristy-Farer* complaint's first cause of action relies on the *CFE* funding mandate, it too states a claim that the State failed to meet Education Article funding obligations.

Although the State contends that a comparison of the 2003-2004 State Education Department fiscal profile with its 2013-2014 counterpart demonstrates that total operational spending for the NYC School District has increased by some $9 billion, far more than the *CFE* minimum, we find the State's effort to demonstrate that it is in compliance with the *CFE* mandate unavailing. Further, we decline to take judicial notice of the fiscal profile spreadsheets on which it relies, since those complex documents, each consisting of tens of thousands of cells of financial data, are outside the record on appeal and not readily comprehensible without the assistance of explanatory expert guidance, which has not been provided.

■ The *NYSER* complaint's second and fourth causes of action, and the *Aristy-Farer* complaint's first cause of action, also state claims under the Education Article. In order to state a valid cause of action under the Education Article, a plaintiff must set forth detailed allegations of systemic district-wide educational deficiencies that are attributable to a lack of funding by the State (*see New York Civ. Liberties Union v State of*

*New York*, 4 NY3d 175, 180-182 [2005] [*NYCLU*]; *Paynter v State of New York*, 100 NY2d 434, 440-441 [2003]; *CFE I*, 86 NY2d at 317-319). This Court has recently reiterated the requirement that plaintiffs asserting a constitutional claim under the Education Article must allege "deprivation of a sound basic education" in the form of "district-wide failure" "attributable to the State" (*see New York City Parents Union v Board of Educ. of the City Sch. Dist. of the City of N.Y.*, 124 AD3d 451, 451-452 [1st Dept 2015] [internal quotation marks omitted]).

More specifically, in *Paynter*, the Court of Appeals explained that, to state a "viable Education Article claim," the plaintiffs must assert "first, that the State fails to provide them a sound basic education in that it provides deficient inputs—teaching, facilities and instrumentalities of learning—which lead to deficient outputs such as test results and graduation rates; and, second, that this failure is causally connected to the funding system" (100 NY2d at 440).

As for the standard of review on a motion to dismiss, in *CFE I*, the Court of Appeals explained:

> "In considering the sufficiency of a pleading subject to a motion to dismiss for failure to state a cause of action under CPLR 3211 (a) (7), our well-settled task is to determine whether, accepting as true the factual averments of the complaint, plaintiff can succeed upon any reasonable view of the facts stated. We are required to accord plaintiffs the benefit of all favorable inferences which may be drawn from their pleading, without expressing our opinion as to whether they can ultimately establish the truth of their allegations before the trier of fact. . . . If we determine that plaintiffs are entitled to relief on any reasonable view of the facts stated, our inquiry is complete and we must declare the complaint legally sufficient" (86 NY2d at 318 [citations and internal quotation marks omitted]).

In *CFE I*, the Court emphasized the importance, in stating a claim under the Education Article, of "fact-based claims of inadequacies in physical facilities, curricula, numbers of qualified teachers, availability of textbooks, library books, etc." (*id.* at 319).

The *NYSER* plaintiffs assert that the State has imposed new educational mandates on school districts but has not funded them, placing financial stress on many districts as evidenced

by a State Comptroller's report that 87 districts "are currently in conditions of financial stress." The *NYSER* complaint devotes 39 paragraphs to educational inputs and outputs in the NYC School District. As to educational inputs, the *NYSER* plaintiffs allege, among other things, that average class sizes district-wide are above benchmarks stated in *CFE II*; the "vast majority" of New York City schools are currently failing to provide mandated academic intervention services for students performing below grade level; nearly half of New York City schools lack adequate library facilities; "[m]ost schools" lack appropriate instructional materials for students learning English as a second language; and 16% of New York City high schools do not have a single science lab.

As to educational outputs, the *NYSER* plaintiffs allege that, in 2013, only 26% of New York City students in grades 3 through 8 obtained proficient scores on the State's achievement tests for English, while only 30% were proficient in math. Stated differently, 74% of New York City students in those grades were not proficient in English, and 70% were not proficient in math. Meanwhile, of students who entered high school in 2007, only 61% obtained high school diplomas as of 2012. If proven, these would be serious indicia of educational failure.

The *NYSER* complaint also offers additional particularized detail as to educational deficits in the Syracuse school district. Specifically, the complaint alleges that class sizes, particularly in the lower grades, have increased dramatically; the district lacks reading and math specialists to provide Academic Intervention Services and Response to Intervention services in the elementary grades; critical after-school and summer school services have been dramatically reduced; graduates lack sufficient credits to be accepted to SUNY schools; cutbacks in custodian staffing have rendered many buildings filthy and mice-infested; and the paucity of support staff has weakened discipline and led to high suspension rates that undermine instructional efforts.

The State notes that neither the *NYSER* complaint nor the *Aristy-Farer* complaint provides any detailed, district-wide input/output information about any district other than New York City, Syracuse, and, to a lesser extent, Buffalo, Rochester, and Yonkers. The State accordingly argues that, at a minimum, the complaints should be dismissed insofar as they relate to the hundreds of districts as to which there are no particular-

ized pleadings. We reject this argument. An Education Article claim must plead district-wide educational deficiencies, but that does not mean that it must be pleaded with particularity as to each and every district in the state. The state educational funding system is an interconnected web in which a complex formula is used to calculate funding for all districts. As a practical matter, actionable deficits identified in one district will require modification of the formula, necessarily affecting calculation of funding for all districts. This is evidenced by the *CFE* cases, which dealt exclusively with funding for the NYC School District but resulted in calculation of statewide funding needs and extrapolation of the NYC School District's share based on statewide figures. Accordingly, for present purposes, it is enough that the plaintiffs have adequately alleged systemic deficiencies in at least one or two districts—New York City and Syracuse. A determination of the practical impact, and the appropriate remedy, if any, can, and should, await a later stage of this action (*see CFE II*, 100 NY2d at 902 [leaving the "actual quality of the educational opportunity in New York City, the correlation between the State's funding system and any failure to fulfill the constitutional mandate, and any justification for claimed discriminatory practices" to be resolved through "development of the record"]).

In its third cause of action, the *NYSER* complaint alleges that the State is breaching its duty under the Education Article to track changes in fiscal and educational conditions by maintaining an appropriate "system of accountability" and to respond appropriately by revising state funding formulas and recommending changes to school districts. The State argues that the *CFE III* Court held that existing accountability mechanisms were adequate and that the Education Article did not require the State to add a "new and costly layer of city bureaucracy" to ensure accountability (*CFE III*, 8 NY3d at 32).

In *CFE III*, the Court found it was "undisputed" that there were "minimally adequate accountability mechanisms now in place for the evaluation of New York schools" (*CFE III*, 8 NY3d at 32). However, the parties dispute the adequacy of accountability mechanisms in light of the significant funding adjustments over the 10 years since *CFE III* was handed down. Thus, it would be premature to foreclose plaintiffs from exploring the adequacy of accountability mechanisms. Indeed, the adequacy of the State's education funding accountability mechanisms is directly related to the State's funding duty.

■ However, the remaining allegations in the third cause of action are not sufficiently related to the State's funding duty, and therefore should be dismissed (*see NYCLU*, 4 NY3d at 182). More specifically, there is merit in the State's contention that there is no precedent for that portion of the *NYSER* plaintiffs' third cause of action that asserts that the State has provided the districts with constitutionally inadequate "information and guidance." Indeed, the Court of Appeals has rejected the notion that the State may be compelled to "intervene on a school-by-school basis to determine . . . sources of failure and devise a remedial plan," because this would "subvert local control [over provision of education] and violate the constitutional principle that districts make the basic decisions on funding and operating their own schools" (*NYCLU*, 4 NY3d at 182). Accordingly, the *NYSER* complaint's third cause of action should be dismissed except to the extent that it challenges the adequacy of the State's accountability mechanisms.

The *Aristy-Farer* complaint's second and third causes of action, asserting substantive due process and equal protection challenges to the APPR and penalty provisions of the Education Law (*see* Education Law §§ 3012-c, 3012-d [11]), fail to state a claim, because that statutory scheme readily passes the appropriate rational basis constitutional scrutiny (*see CFE I*, 86 NY2d at 320; *Levittown Union Free School Dist.*, 57 NY2d at 43).

The "Annual Professional Performance Review" system, requiring school districts to enter into agreements with local collective bargaining units for APPR plans for teachers and principals, was promulgated in 2010. The APPR legislation required the State to withhold all education aid from any district that did not fully implement an APPR plan in any given year. This was done as part of an effort to meet Federal "Race to the Top" education funding provisions, potentially worth hundreds of millions of dollars (*see* Education Law §§ 3012-c, 3012-d [11]). The *Aristy-Farer* plaintiffs assert that the State's withholding of some $290 million in education aid for the New York City School District for 2012-2013, because of the district's failure to comply with the APPR deadline, violated the New York State Constitution's due process and equal protection clauses.

Where no fundamental interest is at stake, substantive due process concerns are satisfied as long as legislation is rationally related to a legitimate state interest (*see Washington v Glucks-*

*berg*, 521 US 702, 728 [1997]; *People v Knox*, 12 NY3d 60, 67 [2009], *cert denied* 558 US 1011 [2009]). Rational basis scrutiny is "the proper standard for review when the challenged State action implicate[s] the right to free, public education" (*Levittown Union Free School Dist.*, 57 NY2d at 43; *see Matter of Levy*, 38 NY2d 653, 658 [1976], *appeal dismissed sub nom Levy v City of New York*, 429 US 805 [1976]; *see also CFE I*, 86 NY2d at 320 [applying rational basis scrutiny to equal protection challenge to educational funding]).

■ Judged under this standard, the *Aristy-Farer* plaintiffs' due process challenge to the APPR penalty provisions fails. The APPR compliance provision is rational because it promotes teacher effectiveness and also because it helps the State to compete for hundreds of millions of dollars in Federal "Race to the Top" funding. Therefore, it was not irrational for the legislature to heavily incentivize local school districts to comply with the APPR provisions, even at the potential price of losing access to some state educational funding.

■ The *Aristy-Farer* plaintiffs' equal protection claim is likewise without merit. State educational funding claims have repeatedly survived equal protection challenges (*see e.g. CFE I*, 86 NY2d at 319-320 [dismissing equal protection challenge to state school financing scheme under rational basis scrutiny]). The *Aristy-Farer* plaintiffs contend that the APPR compliance provision is irrational because it arbitrarily punishes students who happen to live in a school district that does not comply with the APPR statute. We find this contention unavailing; the compliance provision is rational. Further, the distinction between compliant and noncompliant school districts does not constitute the kind of suspect classification that would warrant heightened constitutional scrutiny (*see Levittown*, 57 NY2d at 43-44 [heightened scrutiny applies to equal protection claims "when the challenged State action has resulted in intentional discrimination against a class of persons grouped together by reason of personal characteristics," such as race or gender]).

Although the *Aristy-Farer* complaint focuses on the effects of APPR noncompliance funding penalties on the NYC School District, as noted, it directly points to the State's alleged failure to comply with *CFE* funding mandates, and contains some of the same allegations as the much more detailed *NYSER* complaint regarding inputs and outputs. In any event, the *Aristy-Farer* and *NYSER* actions involve the same nucleus of operative facts, have widely overlapping claims, and have been

consolidated. Thus, we do not find it appropriate to permit one to go forward without the other.

Accordingly, the order of the Supreme Court, New York County (Manuel J. Mendez, J.; op 2014 NY Slip Op 33763[U] [2014]), entered April 9, 2014, which, in the *Aristy-Farer* action, denied defendants' motion to dismiss the complaint, should be modified, on the law, to dismiss the second and third causes of action, and otherwise affirmed, without costs. The order of the same court and Justice, entered November 18, 2014 (2014 NY Slip Op 32930[U] [2014]), which, in the *NYSER* action, denied defendants' motion to dismiss the complaint, should be modified, on the law, to dismiss the third cause of action except insofar as it challenges the adequacy of defendant State's education funding accountability mechanisms, and otherwise affirmed, without costs. The order of the same court and Justice, entered November 18, 2014 (2014 NY Slip Op 33765[U] [2014]), which granted the City of Yonkers's motion to intervene in the *NYSER* action as a party plaintiff, should be reversed, on the law, without costs, and the motion denied.

ACOSTA, RENWICK and ANDRIAS, JJ., concur.

Order, Supreme Court, New York County, entered April 9, 2014, modified, on the law, to dismiss the second and third causes of action, and otherwise affirmed, without costs. Order, entered November 18, 2014, modified, on the law, to dismiss the third cause of action except insofar as it challenges the adequacy of defendant State's education funding accountability mechanisms, and otherwise affirmed, without costs. Order, entered November 18, 2014, reversed, on the law, without costs, and the motion to intervene denied.