People v CVS Pharm., Inc. (2025 NY Slip Op 02857)

People v CVS Pharm., Inc.

2025 NY Slip Op 02857

Decided on May 08, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 08, 2025

Before: Manzanet-Daniels, J.P., Kennedy, Mendez, Rodriguez, JJ. 

Index No. 452253/23|Appeal No. 4313|Case No. 2024-03850|

[*1]People of the State of New York, Plaintiff-Appellant,
v
CVS Pharmacy, Inc., et al., Defendants-Respondents.

Letitia James, Attorney General, New York (Philip J. Levitz of counsel), for appellant.
Williams & Connolly LLP, New York (Jonathan Bradley Pitt of counsel), for respondents.

Judgment, Supreme Court, New York County (Robert R. Reed, J.), entered May 17, 2024, in favor of defendant dismissing the complaint, unanimously affirmed, without costs.
The 340B Drug Pricing Program is a federal program established to assist charitable and other healthcare providers that treat low-income and other at-risk populations. These providers are referred to as "Covered Entities," and under the 340B program, they are allowed to purchase outpatient drugs at discounted prices that are often substantially lower than wholesale or retail prices. Covered Entities often contract with pharmacies (Contract Pharmacies) to dispense these drugs and engage third-party administrators (TPAs) to manage compliance and administrative tasks. Covered Entities rely on 340B savings, defined as the difference between the 340B price and insurance reimbursements, minus administrative fees paid to Contract Pharmacies or TPAs, to fund healthcare services. 
CVS acts as a 340B Contract Pharmacy to some Covered Entities and will not enter into a 340B contract with a Covered Entity unless the Covered Entity agrees to use Wellpartner as its TPA for CVS. CVS does not, however, require that a Covered Entity use Wellpartner exclusively, and the Covered Entity is therefore free to use other TPAs for pharmacies that are not CVS.
In this litigation, commenced under the Donnelly Act (General Business Law § 340 et seq.), plaintiff alleges that defendants engaged in "tying" by using its power in one market (the tying market) to compel consumers to purchase a separate product (the tied product). According to plaintiff, CVS's conduct has foreclosed competition in the 340B TPA services market.
Supreme Court properly dismissed the complaint, as plaintiff has failed to plead a proper relevant tying market. Instead, plaintiff relies on the single-brand market definition, consisting solely of defendant CVS's own pharmacies, that does not properly consider the interchangeability of other pharmacies (see Brandywine Hosp., LLC v CVS Health Corp., 2025 US Dist LEXIS 35066, at *3-5 [ED Pa Feb. 26, 2025, No. 23-1458]; see Global Discount Travel Servs., LLC v TWA, 960 F Supp 701, 705 [SD NY 1997]). Single-brand product markets are disfavored because there are, by definition, no interchangeable products in such a market, and indeed, no competing products at all (see Matter of Am. Express Anti-Steering Rules Antitrust Litig., 361 F Supp 3d 324, 335 [ED NY 2019]). Courts have routinely rejected the single-brand market definition (see id.; see also Mooney v AXA Advisors, L.L.C., 19 F Supp 3d 486, 500 [SD NY 2014]).
Plaintiff argues that Covered Entities do not, and in practice cannot, steer patients — that is, direct patients to fill prescriptions at particular pharmacies — away from filling prescriptions at CVS. In fact, plaintiff maintains, Covered Entities are not inclined to steer patients to particular pharmacies because of fear of litigation, physicians' resentment of administrative [*2]tasks, and concerns about medical ethics. Plaintiff also alleges that some patients either prefer CVS or are required by their insurers to use CVS to fill prescriptions. However, such preferences are not sufficient to support a single-brand market definition (see Mooney, 19 F Supp 3d at 501)
We agree with plaintiff that Supreme Court erred in taking judicial notice of a market share figure advanced by defendants (see Aristy-Farer v State of New York, 143 AD3d 101, 114 [1st Dept 2016], affd as mod 29 NY3d 501 [2017]). However, the court's determination on market definition alone was grounds for dismissal, and that determination did not turn on the disputed figure. As a result, any error in taking judicial notice was harmless (see Anyanwu v Anyanwu, 216 AD3d 1128, 1130 [2d Dept 2023]).
In view of the foregoing, we need not reach the remaining contentions.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 8, 2025