[824 NE2d 947, 791 NYS2d 507]

New York Civil Liberties Union et al., Appellants, v State of New York et al., Respondents.

Argued January 11, 2005; decided February 15, 2005

**POINTS OF COUNSEL**

*New York Civil Liberties Union Foundation,* New York City (*Arthur N. Eisenberg, Christopher Dunn* and *Donald Shaffer* of counsel), for appellants. I. The courts below improperly dismissed plaintiffs' cause of action under the Education Article of the State Constitution. (*Campaign for Fiscal Equity v State of New York,* 86 NY2d 307; *Campaign for Fiscal Equity v State of New York,* 187 Misc 2d 1, 295 AD2d 1, 100 NY2d 893; *City of New York v State of New York,* 86 NY2d 286.) II. Plaintiffs' claim that state officials have violated their own administrative regulations should have been permitted to survive defendants' motion to dismiss. (*Jiggetts v Grinker,* 75 NY2d 411; *Ivory v Edwards,* 278 App Div 359, 304 NY 949; *General Motors Corp. v Industrial Commr.,* 16 AD2d 862; *Walsh v New York State Liq. Auth.,* 45 Misc 2d 601, 23 AD2d 876, 16 NY2d 781; *Matter of*

*Triolo v Johnson,* 65 Misc 2d 424, 40 AD2d 953; *Elms v Lavine,* 79 Misc 2d 1; *United States ex rel. Accardi v Shaughnessy,* 347 US 260; *Service v Dulles,* 354 US 363; *Vitarelli v Seaton,* 359 US 535; *Yellin v United States,* 374 US 109.)

*Eliot Spitzer, Attorney General,* Albany (*Denise A. Hartman, Caitlin J. Halligan* and *Daniel Smirlock* of counsel), for respondents. I. The courts below properly dismissed plaintiffs' Education Article claim for failure to state a cause of action. (*Campaign for Fiscal Equity v State of New York,* 86 NY2d 307; *Campaign for Fiscal Equity v State of New York,* 100 NY2d 893; *United States v City of Yonkers,* 197 F3d 41, 529 US 1130, 123 F Supp 2d 694; *Paynter v State of New York,* 100 NY2d 434.) II. Plaintiffs' Education Article claim is not justiciable because it would entangle the court in New York's complex regulatory processes, which were designed to improve educational services at poorly performing schools. (*Klostermann v Cuomo,* 61 NY2d 525; *Jones v Beame,* 45 NY2d 402; *Matter of Bernstein v Toia,* 43 NY2d 437; *Campaign for Fiscal Equity v State of New York,* 100 NY2d 893; *Campaign for Fiscal Equity v State of New York,* 86 NY2d 307; *Staatsburg Water Co. v Staatsburg Fire Dist.,* 72 NY2d 147; *Matter of Patti Ann H. v New York Med. Coll.,* 88 AD2d 296; *Matter of Markow-Brown v Board of Educ., Port Jefferson Pub. Schools,* 301 AD2d 653, 100 NY2d 512; *Matter of Langston v Iroquois Cent. School Dist.,* 291 AD2d 845; *Paynter v State of New York,* 100 NY2d 434.) III. Plaintiffs fail to state a claim to compel the Commissioner of Education to comply with the Schools Under Registration Review regulations. (*Mahoney v Pataki,* 98 NY2d 45; *Jiggetts v Grinker,* 75 NY2d 411; *Matter of Korn v Gulotta,* 72 NY2d 363; *Klostermann v Cuomo,* 61 NY2d 525; *Grant v Cuomo,* 130 AD2d 154, 73 NY2d 820.) IV. Should this action be permitted to proceed, this Court should make appropriate adjustments to the parties. (*Caruso v New York City Police Dept. Pension Funds,* 72 NY2d 568; *Matter of Board of Educ. of Roosevelt Union Free School Dist. v Board of Trustees of State Univ. of N.Y.,* 282 AD2d 166; *Matter of Jerry v Board of Educ. of City School Dist. of City of Syracuse,* 44 AD2d 198; *Paynter v State of New York,* 270 AD2d 819, 187 Misc 2d 227, 290 AD2d 95, 100 NY2d 434.)

*Patterson, Belknap, Webb & Tyler LLP,* New York City (*Phyllis S. Wallitt, Catherine A. Williams* and *Eugene M. Gelernter* of counsel), for Alliance for Quality Education and others, amici curiae. I. Allegations of school-wide failure are sufficient to state a claim under the Education Article. (*Campaign for Fiscal*

*Equity v State of New York,* 100 NY2d 893; *Paynter v State of New York,* 100 NY2d 434.) II. When significant classes of students, such as minority, low-income, and special education students, are being denied the opportunity for a sound basic education, there is systemic failure. (*Paynter v State of New York,* 100 NY2d 434.) III. Plaintiffs can allege district-wide failures in this case. (*Campaign for Fiscal Equity v State of New York,* 100 NY2d 893; *Affronti v Crosson,* 95 NY2d 713; *Cron v Hargro Fabrics,* 91 NY2d 362; *Campaign for Fiscal Equity v State of New York,* 86 NY2d 307.)

## OPINION OF THE COURT

Chief Judge KAYE.

Plaintiffs bring suit against the State and its agencies responsible for education, alleging that students in 27 named schools outside of New York City are being denied the opportunity for a sound basic education.[1] Although plaintiffs raise two separate claims, one alleging a constitutional violation and the other a regulatory violation, both in effect request the same relief—that the State determine the causes of failure of each of the cited schools, and do something to correct it. We agree with the courts below that plaintiffs' complaint fails to state a cause of action.

### I.

Plaintiffs' first cause of action is brought under the Education Article of the State Constitution, which declares that "[t]he legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated" (NY Const, art XI, § 1). Although the Constitution does not require equality of educational offerings throughout the state (*see Board of Educ., Levittown Union Free School Dist. v Nyquist,* 57 NY2d 27 [1982] [*Levittown*]), it does mandate that the opportunity for a sound basic education be provided to all. Thus, a cause of action may be stated under the Education Article when the State fails in its obligation to meet minimum constitutional standards of educational quality.

Fundamentally, an Education Article claim requires two elements: the deprivation of a sound basic education, and causes

---

1. Plaintiffs contend that they and their schools—located in the districts of Albany, Buffalo, Hempstead, Lackawanna, Mount Vernon, Roosevelt, Schenectady, Syracuse, Utica, Westbury, Wyandanch and Yonkers—are representative of a class consisting of approximately 75,000 students attending an estimated 150 schools in plaintiffs' districts.

attributable to the State. As our case law makes clear, even gross educational inadequacies are not, standing alone, enough to state a claim under the Education Article. Plaintiffs' failure to sufficiently plead causation by the State is fatal to their claim.

In the complaint, plaintiffs allege that defendants "have not taken adequate steps to remedy their [schools'] deficiencies by providing adequate educational resources, services, and physical facilities." They therefore seek a declaratory judgment that defendants "have failed to enact, implement, and maintain an education system in compliance with the Education Article," and a permanent injunction

> "directing defendants to remedy this constitutional violation by creating, implementing and maintaining a statutory and regulatory system that complies with the Education Article . . . by ensuring that all students throughout the State receive an opportunity for a sound basic education, including the provision of sufficient educational resources and adequate physical facilities within all schools and the implementation of administrative measures that will ensure that education expenditures are efficiently and effectively used to provide the opportunity for a sound basic education . . . ; [and requiring] that the State Department of Education conduct a detailed assessment of the sources of failure in each of the 'failing schools' identified and . . . work with local school officials and with the affected communities to devise specific school-based remedial plans for correcting the identified failures and . . . provide sufficient resources to implement the specific plans that are developed; and that a Special Master . . . be appointed to monitor implementation of remedial plans."

Defendants counter that, in order to be cognizable, a claim brought under the Education Article must allege that any educational deficiencies complained of resulted from inadequate funding. Because, in defendants' view, plaintiffs do not base their complaint squarely on an allegation of funding failure, the action must be dismissed. Plaintiffs, however, insist that their allegation that the State has not provided sufficient "educational

resources" necessarily includes a lack of *financial* resources.[2] Indeed, the amended complaint expressly alleges that "[t]he conditions in plaintiffs' schools are exacerbated by insufficient funding. The State of New York does not provide adequate financial resources to afford all students throughout the State the opportunity for a sound basic education." Nevertheless, even construing plaintiffs' allegations liberally, as we must (*see Leon v Martinez*, 84 NY2d 83, 87 [1994]), we conclude that the complaint fails to state a cognizable claim.

Plaintiffs contend that, to the extent they have alleged multiple causes for the failure of their schools, such allegations should not defeat their action. To be sure, there may be several causal links to a single outcome—the Education Article does not require that there be a single cause in order for plaintiffs to state a claim. The defect here, however, is not that plaintiffs have alleged too many causes, but that they have failed to clearly allege even one.

True, plaintiffs contend that their schools are, among other things, insufficiently funded, but the gravamen of their complaint is not that more money is needed in these schools. Rather, it is that the State must undertake to figure out what is needed, which might well include money, and provide it. At bottom, plaintiffs' claim is not premised on any alleged failure of the State to provide "resources"—financial or otherwise—but seeks to charge the State with the responsibility to determine the causes of the schools' inadequacies and devise a plan to remedy them. An Education Article claim, however, requires a clear articulation of the asserted failings of the State, sufficient for the State to know what it will be expected to do should the plaintiffs prevail.

Thus, in *Paynter v State of New York* (100 NY2d 434, 441 [2003]), we held that "allegations of academic failure alone, without allegations that the State somehow fails in its obligation to provide minimally acceptable educational services, are insufficient to state a cause of action under the Education

---

2. Plaintiffs further assert that a lack of funding is in any event not required to state a cause of action, citing to our acknowledgment in *Paynter v State of New York* (100 NY2d 434, 441 [2003]) that in *Campaign for Fiscal Equity, Inc. v State of New York* (86 NY2d 307 [1995]) "we addressed the sufficiency of the pleadings then before us and had no occasion to delineate the contours of all possible Education Article claims." Because we conclude that plaintiffs' claim is insufficient for reasons other than a failure to allege inadequate funding, we need not explore those contours here.

Article." In *Paynter*, the plaintiffs conceded that the State had sufficiently funded the Rochester City School District, but faulted the State for alleged "practices and policies that have resulted in high concentrations of racial minorities and poverty in the school district, leading to abysmal student performance" (100 NY2d at 438). Although they did not claim any inadequacy of inputs, the *Paynter* plaintiffs maintained that the State had nevertheless failed in its obligation to provide a sound basic education by neglecting to mitigate demographic factors that may affect student performance. In their view, "no matter how well the State funds their schools, if plaintiffs and their classmates fail, it is the State's responsibility to change the school population until the results improve" (100 NY2d at 441).

Here, plaintiffs allege deficiencies in both inputs and outputs, contending that minimally acceptable educational services are not being provided in their schools. But even inferring from plaintiffs' claims of inadequate teaching, facilities and instrumentalities of learning that such deficiencies could be ameliorated by increased funding, we nevertheless conclude that plaintiffs have failed to state a cause of action for a more fundamental reason: In identifying individual schools that do not meet minimum standards, plaintiffs do not allege any district-wide failure. Rather, in seeking to require the State to assess and rectify the failings of individual schools, plaintiffs' theory would

> "subvert the important role of local control and participation in education. As we observed in *Levittown*, the Education Article enshrined in the Constitution a state-local partnership in which 'people with a community of interest and a tradition of acting together to govern themselves' make the 'basic decisions on funding and operating their own schools.' The premise of the Article is thus in part that a system of local school districts exists and will continue to do so because the residents of such districts have the right to participate in the governance of their own schools. The aim of the Article 'was to constitutionalize the established system of common schools rather than to alter its substance' "

(*Paynter*, 100 NY2d at 442 [internal citations omitted]).[3]

As the Appellate Division noted, plaintiffs do not request a judgment directing the State to provide additional financial aid to their school districts. The requested relief here bypasses the districts and instead seeks to mandate that the State provide money or other resources directly to individual schools. Requiring the State to intervene on a school-by-school basis to determine each of the 27 named school's sources of failure and devise a remedial plan would, as we explained in *Paynter*, subvert local control and violate the constitutional principle that districts make the basic decisions on funding and operating their own schools.

Plaintiffs misinterpret our recognition in *Campaign for Fiscal Equity, Inc. v State of New York* (100 NY2d 893 [2003] [*CFE II*]) that education is ultimately a responsibility of the State as a holding that education is not ultimately a responsibility of school districts. In *CFE II*, we explained that because both the Board of Education and the City of New York are creatures or agents of the State, which delegated whatever authority over education they wield, the State "remains responsible when the failures of its agents sabotage the measures by which it secures for its citizens their constitutionally-mandated rights" (100 NY2d at 922). This observation, however, is in no way inconsistent with the principles of local control set forth in *Levittown* and reaffirmed in *Paynter*, which would require that any such "sabotage" be committed by the district.

Thus, because school districts, not individual schools, are the local units responsible for receiving and using state funding, and the State is responsible for providing sufficient funding to school districts, a claim under the Education Article requires that a district-wide failure be pleaded.

## II.

Plaintiffs' second cause of action fares no better. As with their constitutional claim, plaintiffs seek an injunction requiring

---

3. School districts have existed in New York for nearly 200 years (*see* L 1812, ch 242 [creating a system for the management of common schools to be headed by a superintendent of common schools, and providing for the establishment of school districts to be run by elected trustees]). Today, procedures for the formation, alteration and dissolution of school districts are set forth in article 31 of the Education Law (*see* Education Law § 1501 *et seq.*; *see also* Education Law §§ 314, 2218).

defendants to determine the causes of failure in their schools and rectify them, based this time on an allegation that defendants have "failed adequately to comply" with their own regulations mandating such remedial action.

Under 8 NYCRR 100.2 (p) (5), those schools "that are determined to be farthest from meeting the school accountability performance criteria" and "most in need of improvement" shall be "place[d] under registration review." Placing a school under registration review (SURR) indicates that "the school is at risk of having its registration [to operate] revoked" (8 NYCRR 100.2 [p] [6] [i]).[4] In deciding on the number of schools to identify as in need of registration review, the Commissioner of Education is authorized to consider, among other criteria, the sufficiency of state and local resources available to implement and monitor improvement efforts (*see* 8 NYCRR 100.2 [p] [5]).

Once a school is identified as under registration review, the Commissioner

> "shall appoint a team to undertake a resource, planning, and program audit of the district and the school. . . . Based upon the results of the audit, the commissioner shall require that:
>
> "(*a*) a corrective action plan be developed by the superintendent of the district . . . in consultation with the school staff, persons in parental relation of children attending the school, and members of the community" (8 NYCRR 100.2 [p] [6] [i]).

Further, the Commissioner shall periodically monitor the implementation of the corrective plan (*see* 8 NYCRR 100.2 [p] [6] [iv]).

Plaintiffs allege that the Commissioner has violated the mandate of the SURR regulations by failing to place their schools under registration review, thereby allowing the schools to continue to provide inadequate educational opportunities. Plaintiffs do not challenge any specific determination of the Commissioner, but rather his failure to take affirmative action.

Inasmuch as plaintiffs seek to test the action or inaction of a public officer, their sole available remedy lies, as the courts

---

4. Since the filing of the instant lawsuit, the regulations and terminology of the Department of Education governing accountability and oversight of public schools (8 NYCRR 100.2) were significantly amended to comply with the federal No Child Left Behind Act of 2001 (Pub L 107-110, 115 US Stat 1425 [2002]).

below held, in a CPLR article 78 proceeding seeking mandamus to compel. Mandamus is available, however, only to enforce a clear legal right where the public official has failed to perform a duty enjoined by law (*see* CPLR 7803 [1]; *Matter of Legal Aid Socy. of Sullivan County, Inc. v Scheinman*, 53 NY2d 12, 16 [1981]). Thus, mandamus does not lie to enforce the performance of a duty that is discretionary, as opposed to ministerial (*see Matter of Brusco v Braun*, 84 NY2d 674, 679 [1994]). A discretionary act "involve[s] the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result" (*Tango v Tulevech*, 61 NY2d 34, 41 [1983]).

■ Because the administrative action of deciding which and how many schools to place under registration review involves an exercise of judgment and discretion by the Commissioner, it cannot be compelled by writ of mandamus, and plaintiffs have failed to state a cause of action to require that their schools be designated as SURR schools. Irrespective of the regulatory mandate that some "corrective action plan" be developed once a school is identified as under registration review, the fact remains that the initial decision to so classify a school is wholly discretionary. Such schools must be determined to constitute those "farthest from meeting the school accountability performance criteria" and "most in need of improvement" of all the schools in the state. Further, the obligations placed upon the Commissioner once a school has been placed on the SURR list are also nonministerial, requiring the exercise of the Commissioner's expertise, judgment and discretion in determining the specific actions to be taken with respect to such a school.

Plaintiffs do not dispute that, through the SURR process, defendants have a procedure in place for accomplishing the very relief plaintiffs seek—that is, trying to improve deficient schools—but contend in effect that since their schools nevertheless remain deficient, defendants must either try something else, or else try harder. Mandamus is unavailable to compel such an uncertain remedy.

Accordingly, the order of the Appellate Division should be affirmed, without costs.

Judges G.B. SMITH, CIPARICK, ROSENBLATT and GRAFFEO concur; Judges READ and R.S. SMITH concur only in result.

Order affirmed, without costs.