This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 75
Miriam Aristy-Farer, et al.,
          Respondents,
        v.
State of New York, et al.,
          Appellants.
---------------------------------
New Yorkers for Students'
Educational Rights ("NYSER"), et
al.,
          Respondents,
        v.
State of New York, et al.,
          Appellants.


          Andrew W. Amend, for appellants.
          Michael A. Rebell, for respondents.




WILSON, J.:

          Since 1894, the New York State Constitution has

mandated that "[t]he legislature shall provide for the

maintenance and support of a system of free common schools,

wherein all the children of this state may be educated" (Art 11,

§ 1).  This Court gave contours to that right in a trilogy known

- 1 -

as the "Campaign for Fiscal Equality" or "CFE" litigation.  In
Campaign for Fiscal Equality v State of New York, we held that
our State Constitution[1] "requires the State to offer all children
the opportunity of a sound basic education.  Such an education
should consist of the basic literacy, calculating, and verbal
skills necessary to enable children to eventually function
productively as civic participants capable of voting and serving
on a jury" (86 NY2d 307, 316 [1995] [CFE I]).  The sound basic
education guaranteed by the Constitution requires the State to
afford students with the "opportunity for a meaningful high
school education, one which prepares them to function
productively as civic participants" and "compete for jobs that
enable them to support themselves" (Campaign for Fiscal Equality
v State of New York, 100 NY2d 893, 908, 906 [2003] [CFE II]).

        Our CFE decisions establish that "[t]here is a
constitutional floor with respect to educational adequacy . . .
[and the courts] are responsible for adjudicating the nature of
[the duty to provide a sound basic education]" (CFE I, 86 NY2d at
315).  The Education Article does not guarantee "that all
educational facilities and services would be equal throughout the
state" (Board of Educ., Levittown Union Free School Dist v
Nyquist [Levittown], 57 NY2d 27, 47-48 [1982]).  Instead, it
requires "a State-wide system assuring minimal acceptable

_____

    [1] Any reference to "the Constitution" herein refers to our
New York State Constitution.

facilities and services" (id. at 47).  "[U]nevenness of educational opportunity d[oes] not render the school financing system constitutionally infirm, unless it c[an] be shown that the system's funding inequities resulted in the deprivation of a sound basic education" (CFE I, 86 NY2d at 315).  The Education Article does not guarantee any particular level or amount of State funding, but rather it guarantees students the opportunity to achieve a basic level of education.

The two actions presently before us require us to determine whether the plaintiffs' claimed violations of the Education Article have been sufficiently pleaded.  Defendants in both cases, collectively, are the State of New York, the Governor, the Board of Regents, and the President of the University of the State of New York and Commissioner of Education.  Plaintiffs in the NYSER action are individual parents of children in a number of school districts, led by New Yorkers for Students' Educational Rights (NYSER), an educational advocacy group.  Plaintiffs in the Aristy-Farer action are primarily parents of New York City schoolchildren who seek to assert claims on behalf of all similarly situated parents and children.  All plaintiffs contend that the State has violated the Education Article by failing to provide students with a sound basic education.

Supreme Court denied defendants' CPLR 3211 motions to

dismiss plaintiffs' respective complaints.[2]  Upon defendants' appeal, in one order, the Appellate Division modified both Supreme Court orders and, as so modified, affirmed (143 AD3d 101, 120 [1st Dept 2016]).  In the NYSER action, the Appellate Division modified to dismiss plaintiffs' third cause of action "except insofar as it challenges the adequacy of defendant State's education funding accountability mechanisms" and otherwise affirmed (id.).  In the Aristy-Farer action, the Appellate Division modified to dismiss the second and third causes of action, leaving only the first cause of action pending.[3]  The Appellate Division granted defendants in both actions leave to appeal to this Court, to answer the certified question: "was the order of the Supreme Court, as modified by [the Appellate Division], properly made?"

We now hold that the NYSER plaintiffs' first and second causes of action do not survive a motion to dismiss.  With respect to the third cause of action, defendants challenge it, as modified by the Appellate Division, only insofar as it concerns school districts other than New York City and Syracuse.  As a result, the third cause of action survives as to New York City

---

[2] We refer to the "complaints."  The operative pleading document in the NYSER action is their amended complaint; for the Aristy-Farer action, it is their second amended complaint.

[3] The Aristy-Farer plaintiffs do not cross-appeal the Appellate Division's decision, thus, the dismissal of their second and third causes of action is not before us.

and Syracuse.  The fourth cause of action, generally alleging an
Education Article violation, is sufficiently pleaded as to New
York City and Syracuse only, and also survives defendants' motion
to dismiss.  The Aristy-Farer plaintiffs do not challenge the
Appellate Division's dismissal of their second and third causes
of action, and we conclude that their remaining cause of action
should also be dismissed.

                              I.

          We briefly summarize the CFE litigation to provide
context.  In CFE I, we held that the plaintiffs adequately
pleaded that the State had failed to provide New York City
students with a sound basic education.  We noted that for those
plaintiffs to prove their case, they would "have to establish a
causal link between the present funding system and any proven
failure to provide a sound basic education to New York City
school children" (CFE I, 86 NY2d at 318), and later explained the
proof should include deficient "inputs" and "outputs" (CFE II,
100 NY2d at 908-909).  In CFE II, we upheld the trial court's
finding that the State had failed to fund New York City schools
adequately to provide a sound basic education, and we directed
the State to "ascertain the cost of providing a sound basic
education in New York City" (id. at 930).  In CFE III, we
rejected the lower courts' determinations that the State had
understated the cost of providing a sound basic education in New
York City (see Campaign for Fiscal Equality v State of New York,

8 NY3d 14, 30 [2006] [CFE III]).

Instead, we held that the obligation to determine the amount and allocation of funds was a peculiarly legislative function, and the State had proffered sufficient evidence to justify its estimate as rational.  "Accordingly, we declare[d] that the constitutionally required funding for the New York City School District include[d] additional operating funds in the amount of $1.93 billion" (id. at 31).  In so concluding, we emphasized our deference to the legislature in areas of education policymaking, budget, and finance.  Our decision in CFE III terminated that litigation; no injunctive relief survives that termination.

II.

The NYSER plaintiffs allege that, in 2007, following our CFE III decision, the State adopted various programs to increase funding not only for New York City schools, as our mandate required, but statewide.  They allege that the State accomplished this through the Budget and Reform Act of 2007 (codified at Education Law § 3602), which included a program, Foundation Aid, that established a new formula for calculating State aid to school districts.  However, according to the NYSER complaint, after the 2008 recession, the State froze education spending levels, and later, reduced them.  Both the NYSER and Aristy-Farer plaintiffs allege that, in 2010, the State enacted "Annual Professional Performance Review" (APPR) legislation,

which required the State to withhold education aid to any district that did not implement a plan to assess the performance of teachers and administrators.  The State enacted the APPR legislation to receive funds under the federal "Race to the Top" program.  After New York City failed to comply in 2012, the State withheld funds.  Those allegations form the core of the current lawsuits.

Plaintiffs in both actions contend that the State has violated the Education Article by failing to fund public schools adequately, but the causes of action differ with regard to the allegations in support thereof.[4]  Specifically, the NYSER complaint contains four causes of action.  First, it alleges that defendants failed to comply with our CFE decisions by depriving the New York City school district of the "minimum constitutional level of funding."  Second, the complaint alleges that students in school districts throughout the state are being deprived of a sound basic education due to defendants' failure to implement the Budget and Reform Act of 2007, and their implementation of various budget-cutting measures.  Third, the complaint alleges that defendants violated the Education Article by, among other things, failing to: identify essential courses of study, develop cost-efficient policies, undertake cost studies to determine the cost of a sound basic education, and ensure an adequate

---

[4] As discussed above, the Appellate Division modified the NYSER plaintiffs' third cause of action and dismissed the Aristy-Farer plaintiffs' second and third causes of action.

accountability system for measuring education performance. Fourth, and finally, the complaint alleges that defendants have failed to provide students across the state with a sound basic education in violation of the Education Article.

The Aristy-Farer plaintiffs focus on the State's adoption of the APPR system, and allege that the State withheld approximately $290 million from the New York City school district. They assert three causes of action, alleging that: first, the State's withholding of the $290 million denied New York City schools funding necessary for the provision of a sound basic education; second, the State's failure to induce school boards and unions to agree to an APPR plan through mechanisms other than by withholding funds was arbitrary, unreasonable, and violated their due process rights; and third, the withholding of funds denied them equal protection.

### III.

"In considering the sufficiency of a pleading subject to a motion to dismiss for failure to state a cause of action under CPLR 3211(a)(7), our well-settled task is to determine whether, 'accepting as true the factual statements of the complaint, plaintiff can succeed upon any reasonable view of the facts stated" (CFE I, 86 NY2d at 318, quoting People v New York City Tr. Auth., 59 NY2d 343, 348 [1983]). Plaintiffs here are entitled to all favorable inferences that can be drawn from their pleadings (see id.). Thus, "[i]f we determine that plaintiffs

are entitled to relief on any reasonable view of the facts stated, our inquiry is complete and we must declare the complaint legally sufficient" (id.).

IV.

Before turning to the specific claims in each complaint, we address the NYSER plaintiffs' contention that they can allege statewide violations of the Education Article based on claimed funding deficiencies without including district-by-district facts in their pleadings.  Our prior Education Article cases have clearly and consistently stated that the type of claims brought here must be pleaded with district specificity to be viable.[5]  In Levittown, we explained that absent allegations of "gross and glaring inadequacy," decisions regarding the allocation of public funds for education fall within the purview of the legislature, not the courts (57 NY2d at 48-49).

In Reform Educ. Financing Inequities Today (REFIT) v

---

[5] We do not foreclose the possibility that allegations sufficient to satisfy our CFE "gross educational inadequacies" test (CFE I, 86 NY2d at 319) could be made on a statewide basis. For example, if the State were to stop funding education after elementary school, or would not allow state monies to be spent on math education, a plaintiff might not need to allege district-by-district inputs and outputs to challenge such policies.  Here, however, the NYSER plaintiffs do not allege the existence of any such statewide rule or policy, but instead contend that, in New York City, Syracuse, and various unspecified school districts around the state, students are not receiving a sound basic education.  That claim requires fact-specific district-by-district allegations of the deprivation of a sound basic education (and later, proof).

Cuomo, decided the same day as CFE I, we held that because the plaintiffs did not claim specifically that students in their district were receiving less than a sound basic education, but instead attacked the gross inequality of funds available to school districts around the state, their pleadings could not survive a motion to dismiss (86 NY2d 279, 285 [1995] ["Giving plaintiffs' submissions the benefit of every favorable inference, they simply do not state a claim that these disparities have caused students in the poorer districts to receive less than a sound basic education, which is all that they are guaranteed by our Constitution"]).  Likewise, in Paynter v State of New York, decided the same day as CFE II, we upheld the dismissal of the plaintiffs' complaint for failure to state a cause of action under the Education Article.  Although the plaintiffs sufficiently pleaded "that by every measure of student achievement [their] schools do not deliver a sound basic education," we found their complaint deficient because they had not "alleged that the substandard academic performance in their school stem[med] from any lack of funds or inadequacy in the teaching, facilities, or instrumentalities of learning" (100 NY2d 434, 438-39 [2003]).

More recently, in New York Civil Liberties Union v State of New York (NYCLU), we rejected plaintiffs' claims premised on failures in individual schools, noting the importance of pleading specific "district-wide" failures caused by

inadequate state funding (see 4 NY3d 175, 178, 181 [2005]).  In NYCLU, we held that although the complaint alleged that "the State of New York does not provide adequate financial resources to afford all students throughout the state the opportunity for a sound basic education[,] . . . even construing plaintiffs' allegations liberally . . . the complaint fails to state a cognizable claim" (id. at 180).  "Thus, because school districts, not individual schools, are the local units responsible for receiving and using state funding, and the State is responsible for providing sufficient funding to school districts, a claim under the Education Article requires that a district-wide failure be pleaded" (id. at 182).

Here, plaintiffs ask us to find that they have stated a claim in "another way," because "[d]istrict-based claims of inadequate inputs and outputs are one, but, as this case shows, cannot be the only, way to plead an Education Article violation" (Pl Br at 3).  Although our CFE and other Education Article decisions do not "delineate the contours of all possible Education Article claims" (CFE I, 86 NY2d at 441), they evidence an important underlying proposition.  Because public schools are funded through a mixture of State and local funds, and because "the Education Article enshrined in the Constitution a state-local partnership in which 'people with a community of interest and a tradition of acting together to govern themselves' make the 'basic decisions on funding and operating their own

schools'" (Paynter, 100 NY2d at 442, quoting Levittown, 57 NY2d at 46), it cannot ordinarily be inferred that deficiencies in funding or educational services in one school district are mirrored in another.  Therefore, allegations of deficiencies in one, several, or many school districts would not ordinarily serve as sufficient allegations about others.  Our CFE decisions can be understood as a way to bring a challenge under the Education Article even if the State's system overall is designed to provide a sound basic education, but such challenges must be brought on a school district level.  Plaintiffs must plead some facts as to each school district they claim falls below the constitutional minimum.  Here, drawing every inference in favor of the NYSER plaintiffs, it is not possible to infer that all -- or even most -- school districts in the state fall below the constitutional floor, and plaintiffs concede that many school districts are not deficient.

The Appellate Division reasoned that the NYSER plaintiffs properly pleaded a statewide claim because "actionable deficits identified in one district will require modification of the formula, necessarily affecting the calculation of funding for all districts" (143 AD3d 101 at 117).  That observation, while perhaps true, provides no justification for allowing the NYSER plaintiffs to proceed with their third and fourth causes of action on a statewide basis.

The NYSER plaintiffs also argue that defendants have a

"self-executing" constitutional obligation to comply with the Education Article, and that by requiring plaintiffs to plead facts on a district-by-district basis, we would shift the burden to prove a violation onto students.  Of course, all members of the Legislative and Executive branches take an oath to uphold the constitutions of the United States and New York, and have a duty to discharge their responsibilities faithfully (see NY Const, art XIII, § 1).  However, as with every such obligation, if a plaintiff claims a violation, it is up to that plaintiff to prove the violation.  Moreover, in the CFE litigation, the plaintiffs sought a variety of forms of ongoing injunctive relief as part of the remedy for the constitutional violation.  Although the trial court ordered, *inter alia*, that the legislature conduct costing-out studies every four years and determine the cost of constitutional compliance on a district-by-district basis statewide, we affirmed the Appellate Division's vacatur of the former and rejected the imposition of the latter (see CFE III, 8 NY3d at 32).  Thus, the very "duty" we rejected in CFE III is the foundation of plaintiffs' argument that they should be excused from pleading specific deficiencies and causation as to each district in which they alleged defendants have failed to provide a sound basic education.

Plaintiffs contend that requiring proof on a district-by-district basis could be difficult, if not impossible, and therefore reason they should be able to prove a statewide

violation by adducing evidence as to some districts of their choosing. However, our precedent requires district-specific pleading for claims of this nature, which plaintiffs here have set forth for New York City and Syracuse only.

V.

We now turn to the specific allegations and individual causes of action in each pleading.

A. *The NYSER Complaint*

The NYSER plaintiffs' first cause of action seeks to hold defendants liable because they allegedly "have failed to comply with the specific decisions and orders of the Court of Appeals in CFE I, CFE II, and CFE III." However, that litigation is concluded. Our CFE decisions do not presently impose any injunctive remedy on defendants. In CFE II, we directed the State to ascertain costs and ensure a system of accountability, struck the lower courts' other remedial orders, and limited our order to New York City schools. In CFE III, we repeatedly stated that the $1.93 billion estimate proffered by the State satisfied our mandate in CFE II. We noted that the State was not "limited to the minimum, or 'floor,' of what it takes to provide a sound basic education" (CFE III, 8 NY3d at 33 [Rosenblatt, J., concurring]). But we in no way imposed any further funding requirements on the State. We recognized in CFE III, and reiterate here, that "[w]e cannot 'intrude upon the policy-making and discretionary decisions that are reserved to the legislative

and executive branches'" (CFE III, 8 NY3d at 28, quoting
Klosterman v Cuomo, 61 NY2d 525, 541 [1984]).  Our deference "is
especially necessary where it is the State's budget plan that is
being questioned" (id.).

In CFE III, we expressly "reject[ed] as unnecessary"
the Appellate Division's multi-year funding directive (CFE III, 8
NY3d at 27).  Likewise, we did not, as the Appellate Division
mistakenly concluded, direct that the State must increase its
spending annually by a "built-in provision for annual updating
for inflation by reference to a specified inflation index" (143
AD3d at 114).  Thus, the NYSER plaintiffs' second cause of
action, based upon the State's alleged violation for failing to
comply with its own 2007 proposed funding, which exceeded the
$1.93 billion we approved in CFE III, must also be dismissed.

Although our CFE decisions may well be valuable to the
NYSER plaintiffs in framing their case as they proceed, they
cannot state a claim based on noncompliance with orders arising
from the CFE litigation, because that litigation has ended.  The
NYSER plaintiffs cannot state a claim for violation of the
Education Article by pleading that State funding levels are not
as great as they would have been under methods of calculation
proposed by the State during the CFE litigation, or contemplated
by the Budget and Reform Act of 2007, because those allegations
do not state a constitutional violation, even though those facts
may be relevant to support the NYSER plaintiffs' fourth cause of

action.[6]  Furthermore, even if some injunctive provision of the
CFE litigation remained, the parties to that lawsuit -- not this
one -- would need to move for contempt in the original
proceeding.  To sustain a motion for contempt, "a lawful judicial
order expressing an unequivocal mandate must have been in effect
and disobeyed. Moreover, the party to be held in contempt must
have had knowledge of the order . . . [and] prejudice to the
rights of a party to the litigation must be demonstrated" (McCain
v Dinkins, 84 NY2d 216, 226 [1994]).

As to the NYSER plaintiffs' third cause of action, the
State does not appeal that portion of the Appellate Division's
decision permitting that claim to proceed, as modified, for the
New York City and Syracuse school districts.  Thus, we do not
decide whether the third cause of action, limited to allegations
of a lack of accountability mechanisms, is a proper independent
cause of action.

In their fourth cause of action, plaintiffs generally

---

[6] The dissent evidences a fundamental misunderstanding of
our holding here, treating it as if it bars plaintiffs, in
pursuing their surviving claim, from the use of facts relating to
the prior CFE litigation and its aftermath, e.g., that "the State
failed to carry out its commitment to provide the amount of state
aid that the governor and the legislature had determined to be
necessary," or that the State "abandon[ed] those efforts."  Those
facts may well be evidence in this case, but they themselves are
neither a cause of action nor the basis for enforcement of
non-existent injunctive relief.  Likewise, neither our decision
today nor the CFE litigation prevents these plaintiffs -- who are
not the CFE plaintiffs -- from obtaining different relief,
including injunctive relief, if warranted based on the proof they
adduce and the findings of the lower courts.

allege that the State defendants "have failed and are continuing to fail to provide . . . an opportunity for a sound basic education in violation of" the Education Article.  As we have held, "[a]n Education Article claim . . . requires a clear articulation of the asserted failings of the State, sufficient for the State to know what it will be expected to do should the plaintiffs prevail" (NYCLU, 4 NY3d 175 at 180).  The NYSER plaintiffs have sufficiently alleged deficient inputs and outputs with respect to New York City and, although in less detail, Syracuse, that give defendants adequate notice of what a potential remedy could require of them.  In that regard, the NYSER complaint alleges deficient inputs (a lack of qualified teachers and principals, low levels of support staff, outdated curricula, unsuccessful English as a Second Language programs, overly large class sizes, lack of basic materials such as textbooks and chalk, a reduction in after-school and summer programs, and inadequate and unclean buildings and facilities) with respect to Syracuse and New York City, with some degree of specificity.  The complaint further alleges deficient outputs with respect to those school districts (poor standardized test proficiency, high failure and drop-out rates, poor English proficiency, and inability to meet basic requirements to gain admission to gain admission to City or State colleges because their high schools do not offer basic course requirements).

The complaint also alleges a causal link between

inadequate State funding and the failure of those two school districts to provide a sound basic education.  Just as the CFE plaintiffs did, going forward, plaintiffs here will need to adduce evidence at trial proving, on the basis of current data, that the State has breached its constitutional obligation to provide a sound basic education to students in public schools. Should plaintiffs be successful, it will be up to the State to craft an appropriate response, subject to judicial review, because the courts have "neither the authority, nor the ability, nor the will, to micromanage education financing" (CFE II, 100 NY2d at 925).

In contrast, aside from New York City and Syracuse, the complaint alleges merely that other unspecified districts throughout the State have, on "average," been forced to reduce instructional expenditures per student and have, as a result, experienced poor student performance.  The very allegations the dissent quotes to illustrate the complaint's purported sufficiency instead highlight its patent failure.  The allegations that "school districts on average have reduced their instructional expenditures per pupil by approximately 7%;" that adequate "reserves" should be "5-10% of a school district's spending levels," but "in 2012-2013, 28 school districts had less than 1% of their budget available;" or that "[eighty-seven] school districts in New York State are currently in conditions of financial stress," assert financial -- not educational --

problems (see Levittown, 57 NY2d at 47-48 ["If what is made available by this system (which is what is to be maintained and supported) may properly be said to constitute an education, the constitutional mandate is satisfied"]).  The NYSER allegations do not allege a causal relationship between the unspecified educational deficiencies and a lack of State funding, or identify any specific districts, such that the State might be put on notice as to the relief sought (see CFE II, 100 NY2d at 928 [declining to order any relief or State action as to districts other than New York City, because "(th)ere the case presented to us, and consequently the remedy, was limited to the adequacy of education financing for the New York City public schools, though the State may of course address statewide issues if it chooses"]).

Further general allegations that "high need school districts have been unable to comply with many state mandates and provide their students the opportunity for a sound basic education at the current funding levels," though at least alleging an educational deficiency in conclusory terms, do not indicate what or how many "high-need" districts there are, the state mandates with which they have been unable to comply, or the causal link we have required to be pleaded.  Certainly, as the dissent points out, "the factual allegations for New York City and Syracuse are more robust than for the remaining districts" -- because the only school districts mentioned in the complaint

other than those two are Buffalo, Rochester, and Yonkers, which are mentioned, e.g., because their residents do not "directly pay school taxes" and receive a subsidy less than the STAR payments made to other districts, or to point out that Rochester and Yonkers are not among the 87 school districts determined to be "in conditions of financial stress" by the Comptroller.

B. *The Aristy-Farer Complaint*

The Aristy-Farer plaintiffs argue that the State's withholding of approximately $290 million in 2012, as a penalty for New York City's failure to comply with the APPR program, violated the Education Article. Their complaint focuses almost exclusively on that penalty, and contains conclusory statements alleging that New York City students do not receive a sound basic education. Those conclusory allegations are insufficient to state a claim. The Aristy-Farer complaint's first cause of action is not viable because it does not contain any fact-specific allegations regarding deficient inputs or outputs in the New York City School District. The complaint does not identify any district-specific reduction in teaching or support staff, depletion of supplies, or inadequate learning facilities. Further, although the complaint makes a perfunctory reference to graduation rates and poor testing scores, it does not causally relate either of those allegations to input deficiencies cause by insufficient funding.

The Aristy-Farer complaint focuses on the State's

withholding of approximately $290 million in 2012 as a penalty for New York City's failure to comply with the APPR program. The Aristy-Farer plaintiffs contend that the State's withholding violated the Education Article. However, as noted above, the Education Article does not mandate a particular dollar amount of State funding, and the complaint contains no allegation of causation linking the State's one-time withholding of $290 million and any alleged failure to provide a sound basic education.

The Appellate Division held the first cause of action should proceed, not because it independently contains sufficient allegations, but because it "contains some of the same allegations as the much more detailed NYSER Complaint regarding inputs and outputs . . . [and because the] actions involve the same nucleus of operative facts, have widely overlapping claims, and have been consolidated" (143 AD3d at 119-120). As the Appellate Division recognized, the Aristy-Farer complaint lacks the specificity of the NYSER complaint, and its remaining cause of action, even when read liberally, is too conclusory to survive a motion to dismiss (see generally Simkin v Blank, 19 NY3d 46, 52 [2012] [allegations consisting of bare legal conclusions are not entitled to be accepted as true on a motion to dismiss]).

The Aristy-Farer complaint's first cause of action lacks sufficient factual "allegations that the State somehow fails in its obligation to provide minimally acceptable

educational services [and therefore is] insufficient to state a cause of action under the Education Article" (Paynter, 100 NY2d at 441). "[F]undamentally, an Education Article claim requires two elements: the deprivation of a sound basic education, and causes attributable to the State" (NYCLU, 4 NY3d at 178-179). The Aristy-Farer plaintiffs have failed to satisfy either of those requirements. A pleading is not an empty formality, and the Aristy-Farer plaintiffs chose to file a separate lawsuit with a separate theory and separate, but highly conclusory, allegations. That the NYSER and Aristy-Farer actions were consolidated on appeal to the Appellate Division does not relieve either set of plaintiffs of the legal obligation to plead with specificity, and the Aristy-Farer plaintiffs cannot rely on the NYSER allegations to support their separate pleading. Thus, the order of the Appellate Division permitting the Aristy-Farer plaintiffs to proceed with their first cause of action should be reversed.

VI.

*Conclusion*

The Aristy-Farer plaintiffs have not stated any cognizable claims, and their complaint should be dismissed in its entirety. The NYSER plaintiffs' first and second causes of action should be dismissed; their third cause of action, as modified by the Appellate Division, and fourth cause of action, should proceed as they relate to New York City and Syracuse only.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be modified in accordance with this opinion, without costs, and, as so modified, affirmed, and the certified question answered in the negative.

Aristy-Farer v State of New York; NYSER v State of New York

No. 75


RIVERA, J.(concurring in part, dissenting in part):

I agree for the reasons stated by the majority that the Aristy-Farer complaint should be dismissed in its entirety because it fails to plead a cognizable claim. However, because the complaint filed by the New Yorkers for Students' Educational Rights (NYSER) adequately pleads several causes of actions against the State for violations of the Education Article as to all districts, I would affirm the Appellate Division as it relates to this action.[1]


I.

The State Constitution's Education Article mandates that "[t]he legislature shall provide for the maintenance and support of a system of free common schools, wherein all the

---

[1] The Appellate Division dismissed those parts of the third cause of action that assert substantive due process and equal protection challenges, because the Annual Professional Performance Review and penalty provisions "readily pass[] the appropriate rational basis constitutional scrutiny" (143 AD3d 101, 118 [1st Dept 2016]). The majority allows the remainder of the third cause of action to proceed as to New York City and Syracuse because the State does not appeal that part of the Appellate Division's order (majority op at 16). For the reasons I discuss, I would also allow this claim to proceed, but with respect to all school districts in the State.

children of this state may be educated" (NY Const, art XI, § 1).
This Court has interpreted that language to require "a State-wide
system assuring minimal acceptable facilities and services in
contrast to [an] unsystematized delivery of instruction" (Board
of Educ., Levittown Union Free Sch. Dist. v Nyquist, 57 NY2d 27,
47 [1982]), and "that the opportunity for a sound basic education
be provided to all" (New York Civil Liberties Union v State of
New York, 4 NY3d 175, 178 [2005][NYCLU]).  To the extent the
State's obligation involves financing public education, the Court
has not determined precisely how much money the State must spend
to comply with its constitutional mandate because such a
determination "presents issues of enormous practical and
political complexity" best left to the other branches of
government (Levittown, 57 NY2d at 38-39).  However, the Court has
maintained that "it is the province of the Judicial branch to
define, and safeguard, rights provided by the New York State
Constitution, and order redress for violation of them" (Campaign
for Fiscal Equity, Inc. v State, 100 NY2d 893, 925 [2003] [CFE
II]).

        The Court's decisions in the trilogy of Campaign for
Fiscal Equity (CFE) cases explain the State's financing
obligations under the Education Article and the methods by which
plaintiffs may bring claims challenging the constitutionality of
State financing.  These decisions further provide the context for
the instant appeal.  In the first CFE case, the Court held that a

group of plaintiffs had pleaded a sustainable claim under the Education Article and a valid cause of action under federal law as provided by Title VI's implementing regulations (86 NY2d at 312 [1995] [CFE I]).  The Court concluded that there is a "constitutional floor with respect to educational adequacy" under the Education Article, and that the Court is "responsible for adjudicating the nature of [the State's] duty" (id. at 315). That "constitutional floor," "requires the State to offer all children the opportunity of a sound basic education" (id. at 316).  CFE I established that a cause of action under the Education Article is properly stated where it alleges that "minimally acceptable educational services and facilities are not being provided in plaintiffs' school districts" (id. at 316). The Court further explained that "[a] relevant issue at this point is whether plaintiffs can establish a correlation between funding and educational opportunity" (id. at 318).  The plaintiffs prevailed at trial, but the Appellate Division reversed.

On appeal, this Court concluded that the State had deprived schoolchildren in New York City of a "sound basic education" (CFE II, 100 NY2d at 918-919).  The Court upheld the trial court's findings that the "inputs" (teaching, facilities, and instrumentalities of learning) were insufficient as reflected by the deficiencies in the "outputs" (test results and both graduation and dropout rates) (id. at 908).  The Court held that

"[r]eforms to the current system of financing school funding and managing schools should address the shortcomings of the current system by ensuring, as a part of that process, that every school in New York City would have the resources necessary for providing the opportunity for a sound basic education" and "the new scheme should ensure a system of accountability to measure whether the reforms actually provide the opportunity for a sound basic education" (id. at 930).  The urgency of the decision is reflected in the Court's order granting the State nine months to comply and develop the mandated reforms (id.).[2]

In accordance with the directives in CFE II, "Governor Pataki issued an executive order creating the New York State Commission on Education Reform, charged with recommending, to the Executive and the Legislature, education financing and other reforms" (Campaign for Fiscal Equity, Inc. v State of New York, 8 NY3d 14, 21-22 [2006] [CFE III]).  The Commission calculated "sound basic education spending estimates for each school district" and compared that figure to the amount the State had actually spent, thereby determining "spending gaps" (id.).  In New York City, the spending gap was $1.93 billion (id. at 24).  Supreme Court convened a Judicial Referee Panel to determine

_____

[2] Pursuant to the Court's order, the State could, and did, adopt a statewide measure to ensure compliance with its constitutional obligations under the Education Article to provide a sound basic education to every public school student in the State.

whether these reforms complied with CFE II (id. at 25). The panel modified the Commission's findings, replacing some parts of its analysis, adopting others, and ultimately determining that the spending gap in New York City was $5.63 billion, not $1.93 billion as the State had found (id. at 26).

On appeal in CFE III, this Court held that "Supreme Court erred by, in effect, commissioning a de novo review of the compliance question" (id. at 27). The Court explained that the role of the courts is not "to determine the best way to calculate the cost of a sound basic education in New York City schools, but to determine whether the State's proposed calculation of that cost is rational" (id.). The trial court "should have proceeded to determine whether the state plan[] incorporated that sound basic education expenditure in its proposed budget and would, if enacted, ensure a system of accountability" (id. at 29-30). Holding that the "state budget plan had already reasonably calculated [the cost of a sound basic education]," the Court upheld the State's plan and "declare[d] that the constitutionally required funding for the New York City School District includes additional operating funds in the amount of $1.93 billion" (id. at 31).

Here, the NYSER plaintiffs contend that the State has not complied with its constitutional obligation under the Education Article, as clarified by this Court in its CFE cases, to provide adequate funding to ensure a sound basic education to

all of New York State's public school children.  Plaintiffs do not, as the majority argues, contend that "they should be able to prove a statewide violation by adducing evidence as to some districts of their choosing" (majority op at 13).  The core of plaintiffs' argument is that "hundreds of thousands of students in the City of New York and in other districts throughout the State of New York are currently being denied the opportunity for a sound basic education" as a result of the State's failure to implement the legislative solutions it passed in response to the holdings in the CFE cases.  This is concededly a novel theory because, first, it is based on the State's duty to ascertain the "actual costs" of providing a sound basic education, and, second, because it alleges that the State's failure has impacted students throughout the state, not just within one or more named districts.  A fresh take on the complex and persistent problems of educational equity and public school underfinancing does not render the complaint deficient so long as the claims are adequately pleaded, as they are here.

## II.

On a motion to dismiss, "our well-settled task is to determine whether, 'accepting as true the factual averments of the complaint, plaintiff can succeed upon any reasonable view of the facts stated'" (CFE I, 86 NY2d at 318 [internal citations omitted]).  Plaintiffs have the right "to seek redress, and not

have the courthouse doors closed at the very inception of an action, where the pleading meets a minimal standard necessary to resist dismissal of a complaint" (Armstrong v Simon & Schuster, Inc., 85 NY2d 373, 379 [1995]).  "Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]).  So long as, "on any reasonable view of the facts stated," plaintiffs are entitled to relief, "our inquiry is complete and we must declare the complaint legally sufficient" (CFE I, 86 NY2d at 318).

"Fundamentally, an Education Article claim requires two elements: the deprivation of a sound basic education, and causes attributable to the State" (NYCLU, 4 NY3d at 178-179).  Such a claim "requires a clear articulation of the asserted failings of the State, sufficient for the State to know what it will be expected to do should the plaintiffs prevail" (id. at 180).

In my view, plaintiffs made this threshold showing.  In the first cause of action, the NYSER plaintiffs allege that the "State defendants have failed to comply with the specific decisions and orders of the Court of Appeals in CFE I, CFE II, and CFE III."  In the second cause of action, they allege that the "State defendants have failed to provide the individual plaintiffs and numerous other students in school districts throughout the State of New York the opportunity for a sound basic education."  In the third cause of action, plaintiffs

allege, in part, that the State defendants have violated the Education Article by failing to "respond appropriately to changes in fiscal and educational conditions and to maintain a state system of education in which all of the students receive the opportunity for a sound basic education."  Lastly, the NYSER plaintiffs' fourth cause of action alleges that the State has failed to provide students statewide with an opportunity for a sound basic education.

Plaintiffs support these causes of action with: (1) a detailed account of the State's failure to implement the statewide plan it had adopted in response to the CFE cases; and (2) facts concerning the fiscal and educational deficiencies across school districts.  Admittedly, the factual allegations for New York City and Syracuse are more robust than for the remaining districts.  That plaintiffs here allege extra and more specific deficiencies in certain districts, however, does not preclude them from claiming that the State has failed to deliver a constitutionally adequate system statewide.  Furthermore, plaintiffs still plead facts as to all school districts, which would entitle them to relief if true.  In addition to the allegations specific to New York City and Syracuse, plaintiffs claim that because of extensive reduction in state aid to public schools, "school districts on average have reduced their instructional expenditures per pupil by approximately 7%." Adequate "reserves" should be "5-10% of a school district's

spending levels," but "in 2012-2013, 28 school districts had less than 1% of their budget available." Further, the complaint alleges that "87 school districts in New York State are currently in conditions of financial stress" and "[e]ven with major efforts to eliminate inefficiencies and adopt cost-effective practices, high need school districts have been unable to comply with many state mandates and provide their students the opportunity for a sound basic education at the current funding levels."

Furthermore, these claims aside, it is enough that plaintiffs allege that, "[f]ollowing the recession of 2008, the State failed to carry out its commitment to provide the amount of state aid that the governor and the legislature had determined to be necessary to provide all students the opportunity for a sound basic education." The NYSER plaintiffs lay out a detailed history of the CFE litigation and the various legislative responses that the State has failed to implement. Affording the complaint every favorable inference, as we are obliged to do at this stage of the litigation, plaintiffs' first, second, and fourth causes of action, and that part of the third challenging the adequacy of the accountability mechanisms, all sufficiently plead cognizable claims under the Education Article.

The majority's characterization of plaintiffs' claims as overly general and unspecified (majority op at 18) is a consequence of the majority's application of a heightened pleading standard, and not any flaw in the complaint. The

majority states that the NYSER complaint asserts "financial --
not educational -- problems" (majority op at 18). Yet, the
complaint alleges that students have been deprived of a sound
basic education and outlines a number of "new mandates" meant to
protect students' education that are unaffordable under current
funding levels. The majority further contends that the NYSER
complaint does "not allege a causal relationship between the
unspecified educational deficiencies and a lack of State funding,
or identify any specific districts, such that the State might be
put on notice as to the relief sought" (majority op at 18
[emphasis in original]). However, the complaint expressly
alleges that: (1) the State has failed to provide the state aid
it committed in response to the CFE decisions; and (2) that
"hundreds of thousands of students" have been denied the
opportunity for a sound basic education because of the "extensive
reductions in state aid to public schools." The clear inference
to be drawn from these allegations is that it is precisely these
State financing failures that are responsible for the educational
deficiencies alleged. As our cases make clear, at this stage of
the litigation, plaintiffs are to be accorded "the benefit of
every possible favorable inference" (Leon v Martinez, 84 NY2d 83,
87 [1994]) and whether they will succeed on the merits "is not
part of the calculus" (EBC I, 5 NY3d at 19). We are concerned
only with whether plaintiffs may be afforded relief "on any
reasonable view of the facts stated," and if so, "we must declare

the complaint legally sufficient" (CFE I, 86 NY2d at 318). The majority's reading of the complaint is inconsistent with this well-established, minimal pleading requirement (Leon, 84 NY2d at 87). Furthermore, because the complaint states clearly the proposed remedy -- fulfillment of the State's obligation to: (1) ascertain the amount required to provide a sound basic education; (2) pass legislation consistent with that figure; and then (3) abide by it, as imposed by the CFE decisions -- the State defendants are on notice as to the relief sought, contrary to the majority's assertion.

Although the majority maintains otherwise (majority op at 9 n 3), its ruling essentially restricts school funding litigation to district-by-district challenges. The majority contends that, "[o]ur prior Education Article cases have clearly and consistently stated that the type of claims brought here must be pleaded with district specificity to be viable" (majority op at 9) and "[o]ur CFE decisions can be understood as a way to bring a challenge under the Education Article even if the State's system overall is designed to provide a sound basic education, but such challenges must be brought on a school district level" (majority op at 11-12).

Our case law neither supports this narrow interpretation of school financing challenges, nor does it require that we adopt a pleading regime exclusively dependent on district-specific claims. In NYCLU, the Court held that the

complaint failed to state a cause of action because plaintiffs' "requested relief here bypasses the districts and instead seeks to mandate that the State provide money or other resources directly to individual schools" (4 NY3d at 182). Contrary to the majority's suggestion, the Court's holding in that case was therefore not premised on the fact that plaintiffs erroneously pleaded statewide failures, but instead on the fact that they erroneously pleaded individual-school failures. The Court's holding in REFIT similarly does not shut the courthouse door to statewide claims (Reform Educ. Fin. Inequities Today [REFIT] v Cuomo, 86 NY2d 279 [1995]). In that case, plaintiffs alleged an Education Article claim on the basis of a "disparity in the amount of money spent per pupil in property-poor as compared to property-rich school districts" (86 NY2d at 283). Having already held that "[t]he Education Article does not by its express terms contain an egalitarian component," the Court was bound to conclude that the complaint failed to state a cause of action (id. at 284). Furthermore, the CFE cases, as with NYCLU and REFIT, "addressed the sufficiency of the pleadings then before us and had no occasion to delineate the contours of all possible Education Article claims" (Paynter v State, 100 NY2d 434, 442 [2003]). Those cases were limited to their facts and do not expressly prohibit plaintiffs here from bringing claims grounded in violations having a statewide impact. Nor do they provide a basis to limit the way plaintiffs articulate post-CFE school

financing claims.

Furthermore, there is no judicial precedent for the majority's suggestion that the State defendants would only be bound by the CFE decisions if there had been some injunctive relief ordered in those cases (majority op at 14).  This argument is neither relied on by the State nor discussed by the courts below.  For good reason -- the argument has no application in this appeal.  As the Court has explained, "it is the province of the Judicial branch to define, and safeguard, rights provided by the New York State Constitution" (CFE II, 100 NY2d at 925).  When the Court makes such a constitutional determination, the State is bound by it, injunction or not.[3]  It bears repeating that a plaintiff may -- as with any party alleging injury -- rely on our explications of the State's constitutional obligation under the Education Article when asserting a subsequent violation of the law.


III.

School financing cases are difficult, complex, and require expansive resources (see Michael Heise, Equal Educational Opportunity Hollow Victories, and the Demise of School Finance

_____

   [3] The State's abandonment of its efforts to comply with the CFE cases is therefore not solely potential evidence for a future case, as the majority contends (majority op at 16 n 6), but is itself a cause of action because it represents a constitutional violation.

Equity Theory: An Empirical Perspective and Alternative
Explanation, 32 Ga L Rev 543, 580 [1998] ["the legal
operationalization of [school finance] equity, at least at the
public level involving school resources, has proven notoriously
complex and difficult"]).  The CFE litigation illustrates the
challenges inherent in these cases.  Beginning in 1995, the CFE
cases were litigated for over two decades, with the last of the
CFE cases being decided in 2006.  The actions involved numerous
appeals and remands, and it was not until a year after the final
case was litigated that the state developed its legislative
response.  In the interim, generations of children were denied
the education guaranteed by our State Constitution.  Against the
tide of this Court's prior decisions, the majority's holding
makes it all but impossible to address constitutional violations
other than through burdensome piecemeal litigation.  The result
will be that meritorious claims will go unfiled, due in part to a
lack of litigation resources and the inability of parents and
children to wait decades for a possible victory from which they
will never benefit directly.  Yet, the stakes are high.  At issue
in these cases is the constitutional guarantee to every child in
public school that the education funded by the State provides
them with the basic skills they need to participate meaningfully
in society.  Education is unique because of its importance "in
maintaining our basic institutions, and the lasting impact of its
deprivation on the life of the child" (Plyler v Doe, 457 US 202,

221 [1982]).  Education is the great leveler of social and economic inequalities, and "[i]n America, education is still the great equalizer" (Arne Duncan, US Secretary of Education, 2011).

The Court is "responsible for adjudicating the nature" of the State's constitutional obligations (CFE I, 86 NY2d at 315).  When the Court held in CFE II that the State was required to "ascertain the actual cost of providing a sound basic education" (100 NY2d at 930), that mandate was not limited to the Budget and Reform Act of 2007, it was a constitutional requirement that survives the CFE litigation.  The State was not free to attempt compliance and then abandon those efforts.  It is for the legislature to determine *how* to comply with CFE, but compliance is undeniably required.  Insofar as the NYSER complaint makes specific factual allegations that the State has failed to comply with the Court's decisions in the CFE cases, and as a result students have not received a sound basic education, the claims meet the "minimal standard necessary" to survive the State's motion to dismiss (Armstrong, 85 NY2d at 379).

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

Order, insofar as appealed from, modified in accordance with the opinion herein, without costs, and, as so modified, affirmed and certified question answered in the negative.  Opinion by Judge Wilson.  Chief Judge DiFiore and Judges Stein, Fahey and Garcia concur.  Judge Rivera concurs in part and dissents in part in an opinion.  Judge Feinman took no part.

Decided June 27, 2017